**Record No. 11-1259(L)**

**Cons. W/11-1266, 11-1270, 11-1272, 11-1276, 11-1277, 11-1281, 11-1282, 11-1284, 11-1289, 11-1291, 11-1292, 11-1295, 11-1297, 11-1299, 11-1304, 11-1308, 11-1316**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DENNIS McLEOD, BETTY McLEOD and ANDY S. NEWMAN, on behalf of themselves and others similarly situated, *et al.*,

Plaintiffs-Appellants,

v.

PB INVESTMENT CORPORATION and M&T BANK CORPORATION,

Defendants-Appellees.

## CONSOLIDATED BRIEF OF APPELLEES

On Appeal from the United States District Court for the District of Maryland
(Hon. J. Frederick Motz)

Gerard J. Gaeng
ROSENBERG | MARTIN |
GREENBERG, LLP
25 South Charles Street, Suite 2115
Baltimore, MD 21201
(410) 727-6600
ggaeng@rosenbergmartin.com

*Lead Counsel and Counsel for Appellees
Sovereign Bank, Residential Funding
Company, LLC, Fifth Third Bank, The
Bank of New York Trust Company, and
JP Morgan Chase Bank, N.A.*

James C. Martin
John M. McIntyre
Colin E. Wrabley
David J. Bird
REED SMITH, LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131
jcmartin@reedsmith.com
jmcintyre@reedsmith.com
cwrabley@reedsmith.com
dbird@reedsmith.com

*Counsel for Appellees Sovereign Bank,
Residential Funding Company, LLC,
Deutsche Bank Trust Co. Americas,
Bank of New York Mellon, and JP
Morgan Chase Bank, N.A.*

James D. Mathias
Anthony P. Ashton
DLA PIPER, LLP (US)
6225 Smith Avenue
Baltimore, MD 21209-3600
(410) 580-3000
james.mathias@dlapiper.com
anthony.ashton@dlapiper.com

*Counsel for Appellees PB Investment
Holdings LLC, successor by merger to PB
Investment Corporation, and M&T Bank
Corporation*

Brian L. Moffet
GORDON, FEINBLATT, ROTHMAN,
HOFFBERGER & HOLLANDER, LLC
233 East Redwood Street
Baltimore, MD 21202
(410) 576–4291
bmoffet@gfrlaw.com

*Counsel for Appellees PSB Lending
Corporation and PSB Lending Home
Loan Owner Trust 1997-4*

Gregory L. Lockwood
TREANOR, POPE & HUGHES
29 West Susquehanna Avenue, Suite 110
Towson, MD 21204
(410) 494-7777
gllockwood@tph-law.com

*Counsel for Appellees Homeq Servicing
Corporation, n/k/a Wachovia Equity
Servicing, LLC f/k/a TMS Mortgage, and
Wells Fargo Bank, N.A. f/k/a Wachovia
Bank, N.A. f/k/a First Union National
Bank, N.A.*

Daniel H. Squire
Reginald B. McKnight
WILMER CUTLER PICKERING
HALE AND DORR, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
daniel.squire@wilmerhale.com
reginald.mcknight@wilmerhale.com

*Counsel for Appellees HSBC Finance
Corporation, Household Finance
Corporation, Mortgage Electronic
Registration Systems, Inc., and HSBC
Mortgage Services, Inc.*

Daniel J. Tobin
BALLARD SPAHR, LLP
4800 Montgomery Lane, Suite 700
Bethesda, MD 20814-6354
(301) 664-6210
tobindj@ballardspahr.com

*Counsel for Appellees Litton Loan
Servicing LP, U.S. Bank, N.A., and Wells
Fargo Bank, N.A.*

Jefferson V. Wright
E. Hutchinson Robbins, Jr.
Scott R. Wilson
MILES & STOCKBRIDGE, PC
10 Light Street
Baltimore, MD 21202
(410) 727-6464
jwright@milesstockbridge.com
erobbins@milesstockbridge.com
swilson@milesstockbridge.com

*Counsel for Appellee Bank of America
Corporation*

LeAnn Pedersen Pope
Victoria R. Collado
Andrew LeMar
BURKE, WARREN, MACKAY &
SERRITELLA, PC
22nd Floor
330 North Wabash Avenue
Chicago, IL 60611
(312) 840-7000
lpope@burkelaw.com
vcollado@burkelaw.com
lpope@burkelaw.com

*Counsel for Appellees JPMorgan Chase
Bank, N.A., formerly known as Chase
Manhattan Bank, and Banc One
Financial Services, Inc., now known as
JPMorgan Chase Bank, N.A.*

Bruce E. Alexander
WEINER BRODSKY SIDMAN
KIDER, PC
1300 19th Sreet, NW
5th Floor
Washington, DC 20036
(202) 628-2000
alexander@wbsk.com

*Counsel for Appellee Bayview Loan
Servicing, LLC*

Edward J. Longosz, II
Daniel A. Glass
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
1717 Pennsylvania Avenue, NW
12th Floor
Washington, DC 20006
(202) 659-6600
elongosz@eckertseamans.com
dglass@eckertseamans.com

Dorothy A. Davis
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA  15219-2788
(412) 566-5953
ddavis@eckertseamans.com

*Counsel for Appellee Fairbanks Capital
Corporation n/k/a Select Portfolio
Servicing, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. __11-1297__    Caption: __Linda Orem v. Bank of America Corporation, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Bank of America Corporation__ who is _____ __Appellee__ _____, makes the following disclosure:
(name of party/amicus)               (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO
2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on ___April 11, 2011___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:


_____          ___4/11/11___
(signature)                                (date)

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. __11-1276__    Caption: __Phillips v. Residential Funding Company, LLC et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Bank of New York Mellon__ who is __Appellee__, makes the following disclosure:
(name of party/amicus)         (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations? ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**★★★★★★★★★★★★★★★★★★★★★★★★★★★★**

I certify that on __April 20, 2011__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__/s/ John M. McIntyre__                        __April 20, 2011__
(signature)                                           (date)

<u>Attachment to Disclosure of Corporate Affiliations and Other Interests</u>

2.    The Bank of New York Mellon, as successor to The Bank of New York, is a New York banking institution.  It is a wholly owned subsidiary of The Bank of New York Mellon Corporation.

3.    The Bank of New York Mellon, as successor to The Bank of New York, is a New York banking institution.  It is a wholly owned subsidiary of The Bank of New York Mellon Corporation.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. __11-1299__    Caption: __Mitchell v. PSB Lending Corp.11-1299__

Pursuant to FRAP 26.1 and Local Rule 26.1,
__Bayview Loan Servicing, LLC__ who is _____appellee_____, makes the following disclosure:
(name of party/amicus)                    (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    **NO**

2.    Does party/amicus have any parent corporations?    **YES**
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:   The parent is Bayview Asset Management, LLC, a Delaware LLC, with its principal place of business in Coral Gables, FL.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    **NO**
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    **YES**
      If yes, identify entity and nature of interest:
      Bankers Insurance Service, Chicago, IL, and XL Specialty Insurance Company, Stamford, CT.

5.    Is party a trade association? (amici curiae do not complete this question)    **NO**
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    **NO**
      If yes, identify any trustee and the members of any creditors' committee:

### CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____April 11, 2011_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__Bruce E. Alexander__                         __April 11, 2011__
        (signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. __11-1308__   Caption: __Sheldon Johnson v. Residential Funding Company__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Deutsche Bank Trust co.__   who is   _____Appellee_____ , makes the following disclosure:
(name of party/amicus)          (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
2.   Does party/amicus have any parent corporations? ☑ YES ☐ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
     If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on __April 20, 2011__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__/s/ John M. McIntyre__                          __April 20, 2011__
(signature)                                        (date)

### Attachment to Disclosure of Corporate Affiliations and Other Interests

2.      Deutsche Bank Trust Company Americas ("DBTCA") is not a publicly held corporation. It is an indirect subsidiary of Deutsche Bank AG, which is a publicly held corporation. DBTCA's parent corporations are: Deutsche Bank Trust Corporation, which is a subsidiary of Taunus Corporation, which is a subsidiary of Deutsche Bank AG.

3.      Deutsche Bank Trust Company Americas ("DBTCA") is not a publicly held corporation. It is an indirect subsidiary of Deutsche Bank AG, which is a publicly held corporation. DBTCA's parent corporations are: Deutsche Bank Trust Corporation, which is a subsidiary of Taunus Corporation, which is a subsidiary of Deutsche Bank AG.

4/19/11 10 43 AM

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 11-1316    Caption: Dennis Trojanowski v. Fifth Third Bank

Pursuant to FRAP 26.1 and Local Rule 26.1,

Fifth Third Bank _____ who is _____ Appellee _____, makes the following disclosure:
(name of party/amicus)              (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO
2.  Does party/amicus have any parent corporations? ☑YES ☐NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Fifth Third Financial Corporation; Fifth Third Bancorp
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑YES ☐NO
    If yes, identify all such owners:
    Fifth Third Bancorp
4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☑YES ☐NO
    If yes, identify entity and nature of interest:
    See attached list
5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**********************************

I certify that on ____ April 15, 2011 ____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          April 15, 2011
(signature)                               (date)

United States Court of Appeals for the Fourth Circuit
Disclosure of Corporate Affiliations and Other Interests


Attachment of Fifth Third Bank


4.     Federal Insurance Company (Chubb); American International Specialty Lines Insurance Company; St. Paul Mercury Insurance Company, Inc.; U.S. Specialty Insurance Company (HCC Holdings); Axis Insurance Company; XL Specialty Insurance Company (XL Capital Ltd.); and Twin City Fire Insurance Company.

4811-2246-2729, v. 1

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than
one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or
mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici
curiae are required to file disclosure statements. Counsel has a continuing duty to update this
information.

No. __11-1272__    Caption: Nance v. Baltimore American Mortgage Company, Inc., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

__HSBC Finance Corporation__ who is _____appellee_____, makes the following disclosure:
(name of party/amicus)          (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent
    corporations:
    Household International, Inc., Household Finance Corporation, HSBC, HSBC Holdings plc
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
    other publicly held entity?  ☑ YES ☐ NO
    If yes, identify all such owners:
    Household International, Inc., Household Finance Corporation, HSBC, HSBC Holdings plc
4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on ___April 11, 2011___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:


_/s/ Daniel H. Squire_                              April 11, 2011
(signature)                                         (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. __11-1297__     Caption: __Orem v. Bank of America, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Household Finance Corp.__ who is _____appellee_____, makes the following disclosure:
(name of party/amicus)                    (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations?   ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    HSBC Finance Corporation, Household International, Inc., HSBC, HSBC Holdings plc
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☑ YES ☐ NO
    If yes, identify all such owners:
    HSBC Finance Corporation, Household International, Inc., HSBC, HSBC Holdings plc
4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on __April 11, 2011__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Daniel H. Squire                                        April 11, 2011
_____                    _____
(signature)                                                      (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 11-1276    Caption: Phillips v. Residential Funding Company, LLC et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

JPMorgan Chase Bank, N.A. who is _____Appellee_____, makes the following disclosure:
(name of party/amicus)    (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO
2.  Does party/amicus have any parent corporations?  ☑YES ☐NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    JPMorgan Chase & Co.
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑YES ☐NO
    If yes, identify all such owners:
    JPMorgan Chase & Co.
4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on ___April 11, 2011___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Colin E. Wrabley                    April 11, 2011
_____            _____
(signature)                                (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than
one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or
mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici
curiae are required to file disclosure statements.  Counsel has a continuing duty to update this
information.

No. __11-1277__    Caption: __Rodwell v. PSB Lending Corp., et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Litton Loan Servicing LP__ who is _____appellee_____, makes the following disclosure:
(name of party/amicus)               (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent
    corporations:
    See attached Exhibit A.
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
    other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:
    See attached Exhibit A.
4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on ____4/11/11____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:


_____                    _____
        (signature)                                      (date)

**Exhibit A**

2.      Litton Loan Servicing LP is a limited partnership whose general partner is Litton
Consumer and Corporate Servicing LLC and whose limited partner is Litton Mortgage Servicing
LLC.  The ultimate corporate parent of the limited partnership is The Goldman Sachs Group Inc.,
a publicly traded company.

### UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 11-1259    Caption: Dennis McLeod, et al. v. PB Investment Corporation, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

M&T Bank Corporation    who is _____ appellee _____ , makes the following disclosure:
(name of party/amicus)                (appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity? [✓] YES [ ] NO
2. Does party/amicus have any parent corporations? [ ] YES [✓] NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? [ ] YES [✓] NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? [ ] YES [✓] NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) [ ] YES [✓] NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? [ ] YES [✓] NO
   If yes, identify any trustee and the members of any creditors' committee:

### CERTIFICATE OF SERVICE
****************************

I certify that on _____ April 5, 2011 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

E. David Hoskins, Esquire
The Law Offices of E. David Hoskins, LLC
2 Hamill Road, Ste. 362
Baltimore, Maryland 21202

Daniel O. Myers, Esquire
Law Offices of Daniel O. Myers, LLC
1127 Queensborough Blvd. Ste. 105
Mt. Pleasant, SC 29464

s/Anthony P. Ashton                                    April 5, 2011
(signature)                                                (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 11-1272    Caption: Nance v. Baltimore American Mortgage Company, Inc., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Mortg. Electronic Reg. Sys. who is _____ appellee _____, makes the following disclosure:
(name of party/amicus)    (appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
   MERSCORP, Inc.
3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
   If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ April 11, 2011 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Daniel H. Squire                                April 11, 2011
_____                          _____
(signature)                                      (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 11-1259    Caption: Dennis McLeod, et al. v. PB Investment Corporation, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

PB Investment Corporation   who is _____ appellee _____, makes the following disclosure:
(name of party/amicus)           (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO
2.  Does party/amicus have any parent corporations?   ☑YES ☐NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Manufacturers and Traders Trust Co., First Empire State Holding Co., M&T Bank Corp.
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
****************************

I certify that on ____ April 5, 2011 ____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

E. David Hoskins, Esquire
The Law Offices of E. David Hoskins, LLC
2 Hamill Road, Ste. 362
Baltimore, Maryland 21202

Daniel O. Myers, Esquire
Law Offices of Daniel O. Myers, LLC
1127 Queensborough Blvd. Ste. 105
Mt. Pleasant, SC 29464

s/Anthony P. Ashton                          April 5, 2011
_____                   _____
(signature)                                      (date)

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. __11-1277__    Caption: __William Rodwell v. PSB Lending Corporation, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__PSB Lending Corporation__ who is __Appellee__, makes the following disclosure:
(name of party/amicus)    (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Pacific Services Group, Pacific Holdings Group, and Pacific USA Holdings Corp.
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
****************************

I certify that on __April 4, 2011__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

E. David Hoskins, Esquire
The Law Office of E. David Hoskins
2 Hamill Road, Suite 362
Baltimore, Maryland 21210

Daniel J. Tobin, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
4800 Montgomery Lane, 7th Floor
Bethesda, Maryland 20814-3401

_____    April 4, 2011
    (signature)    _____
    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 11-1299   Caption: James E. Mitchell, et al. v. PSB Lending Corporation, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

PSB Lending Home Loan
Owner Trust 1997-4   who is _____ Appellee _____ , makes the following disclosure:
(name of party/amicus)           (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations?   ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Pacific Services Group, Pacific Holdings Group, and Pacific USA Holdings Corp.
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ April 7, 2011 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See attached.


_____          _____ April 7, 2011 _____
        (signature)                                  (date)

E. David Hoskins
The Law Office of E. David Hoskins
2 Hamill Road, Suite 362
Baltimore, Maryland 21210
*Attorney for Plaintiffs*

Bruce E. Alexander
Weiner Brodsky Sidman Kider PC
1300 19th Street, N.W. 5th floor
Washington, D.C. 20036
*Attorneys for Bayview Loan Servicing, LLP*

Gregory L. Lockwood
Pope & Hughes, P.A.
Suite 110
29 West Susquehanna Ave
Towson, MD 21204
*Attorney for Wachovia Bank, N.A.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 11-1276    Caption: Phillips v. Residential Funding Company, LLC et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Residential Funding Co, LLC who is _____Appellee_____, makes the following disclosure:
(name of party/amicus)    (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations? ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Residential Funding Company, LLC is a wholly owned indirect subsidiary of GMAC Inc.
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
    If yes, identify all such owners:
    General Motors Co. is beneficiary of trust that owns more than 10% of the stock of GMAC, Inc.
4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on ___April 11, 2011___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Colin E. Wrabley                        April 11, 2011
_____          _____
(signature)                                      (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 11-1292    Caption: In re: McLaren Brewster; Vanta Othela Brewster

Pursuant to FRAP 26.1 and Local Rule 26.1,

Select Portfolio Servicing Inc who is _____ appellee _____, makes the following disclosure:
(name of party/amicus)         (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    SPS Holding Corp.; Credit Suisse (USA) Inc.
3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ April 8, 2011 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

E. David Hoskins, Esquire
The Law Offices of E. David Hoskins LLC
2 Hamill Road, Suite 362
Baltimore, Md. 21202

Daniel O Meyers, Esq.
Law Offices of Daniel Meyers
1127 Queensborough Blvd. Ste. 105
Mt. Pleasant, SC 29464

Anthony Ashton, Esquire and James D. Mathias
DLA Piper, LLP
6225 Smith Avenue
Baltimore Md. 21209

/s/ Daniel A. Glass                              April 8, 2011
_____                  _____
(signature)                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. __11-1266__     Caption: __Hutchison v. Sovereign Bank__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Sovereign Bank__ who is __Appellee__, makes the following disclosure:
(name of party/amicus)    (appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
   Sovereign is a wholly owned subsidiary of Santander Holdings USA, Inc., a Virginia Corporation
3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
   If yes, identify all such owners:
   Effective January 30, 2009, Banco Santander S.A. acquired Santander Holdings
4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
   If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on __April 11, 2011__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__/s/ Colin E. Wrabley__                          __April 11, 2011__
(signature)                                        (date)

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. __11-1277__    Caption: __Rodwell v. PSB Lending Corp., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__U.S. Bank N.A.__ who is __appellee__ , makes the following disclosure:
(name of party/amicus)            (appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO
2. Does party/amicus have any parent corporations? ☑YES ☐NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
   Wholly owned by its parent company, U.S. Bancorp, a Delaware corporation.
3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:
   Wholly owned by its parent company, U.S. Bancorp, a Delaware corporation.
4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
   If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on __4/11/11__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          __4/11/11__
(signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than
one attorney. Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or
mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici
curiae are required to file disclosure statements. Counsel has a continuing duty to update this
information.

No. 11-1270   Caption: Charles Hebb, et al. v. Premier Financial, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Wachovia Equity Servicing who is _____ Appellee _____, makes the following disclosure:
(name of party/amicus)                (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
2.   Does party/amicus have any parent corporations?   ☑ YES ☐ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:
     Wells Fargo & Company NYSE
3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?   ☑ YES ☐ NO
     If yes, identify all such owners:
     Wells Fargo & Company NYSE
4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ April 11, 2011 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                          April 11, 2011
(signature)                                       _____
                                                  (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. **11-1277**     Caption:  Rodwell v. PSB Lending Corp., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Wells Fargo Bank, N.A.     who is     appellee     , makes the following disclosure:
(name of party/amicus)          (appellant/appellee/amicus)

| | | |
|---|---|---|
| 1. | Is party/amicus a publicly held corporation or other publicly held entity? | ☐YES ☑NO |
| 2. | Does party/amicus have any parent corporations? | ☑YES ☐NO |
| | If yes, identify all parent corporations, including grandparent and great-grandparent corporations:<br>See attached Exhibit A. | |
| 3. | Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? | ☐YES ☑NO |
| | If yes, identify all such owners:<br>See attached Exhibit A. | |
| 4. | Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? | ☐YES ☑NO |
| | If yes, identify entity and nature of interest: | |
| 5. | Is party a trade association? (amici curiae do not complete this question) | ☐YES ☑NO |
| | If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member: | |
| 6. | Does this case arise out of a bankruptcy proceeding? | ☐YES ☑NO |
| | If yes, identify any trustee and the members of any creditors' committee: | |

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____4/11/11_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____4/11/11_____
(signature)                                         (date)

**Exhibit A**

2.    Appellants name both Wells Fargo Bank Minnesota, N.A. and Wells Fargo Bank, N.A. as appellees.  Wells Fargo Bank of Minnesota, N.A. no longer exists, but rather is now part of Wells Fargo Bank, N.A.  Wells Fargo Bank, N.A. is wholly owned by Wells Fargo & Company, which is a Delaware corporation.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS .......................................i

TABLE OF CONTENTS....................................................... xxvii

TABLE OF AUTHORITIES ..................................................xxx

STATEMENT OF THE ISSUES...................................................1

STATEMENT OF FACTS ........................................................2

I.    After Eight Years In Maryland State Court, Plaintiffs Plead New
      Class Claims Against Defendants, And Those Defendants Remove
      The Actions To Federal Court. ........................................2

II.   Plaintiffs File Amended Complaints Asserting Claims Against The
      Assignee Defendants For Their Lenders' Alleged SMLL Violations
      Based On Maryland UCC § 3-306 And, In Some Cases, 15 U.S.C.
      § 1641(d)(1). .........................................................5

III.  The District Court Dismisses Plaintiffs' Claims Under Maryland UCC
      § 3-306 And 15 U.S.C. § 1641(d)(1) Because Those Claims Are Not
      Sustainable Under The Language Of The Statutes And Controlling
      Law. .................................................................7

IV.   The District Court Denies, As Futile, Two Requests For Leave To
      Amend To Assert SMLL Claims Against Servicer Defendants Who
      Also Are Licensed As "Lenders" By The State Of Maryland. ......................8

SUMMARY OF THE ARGUMENT ......................................................9

STANDARD OF REVIEW ..........................................................11

ARGUMENT .....................................................................13

I.    The District Court Correctly Concluded That Plaintiffs Have No Right
      Of Action Under State Or Federal Law Against The Assignee
      Defendants For The Alleged Conduct Of Plaintiffs' Lenders......................13

      A.    Maryland Law Does Not Support Plaintiffs' Actions Against
            Their Purported Loan Assignees. .....................................14

      1.     Plaintiffs Have Waived Any Argument Under Maryland Common Law, And Maryland Common Law Does Not Authorize An Action Against A Purported Loan Assignee Based Solely On A Lender's Alleged Conduct. .......14

      2.     Maryland UCC § 3-306 Does Not Authorize An Action Against A Purported Loan Assignee Based Solely On A Lender's Alleged Conduct. ......................................................17

B.     HOEPA Does Not Provide An Affirmative Right Of Action For A Borrower Against A Purported Loan Assignee Based Solely On A Lender's Alleged Conduct. .......................................................25

      1.     By Its Plain Terms, § 1641(d)(1) Only Concerns An Assignee's Rights In A Loan Instrument And Eliminates Special Protections That Might Otherwise Apply. ...................26

      2.     The Context Surrounding The Enactment Of § 1641(d)(1) Confirms That The Statute Only Eliminates Holder-In-Due-Course Protections For Loan Assignees. .........33

      3.     The Legislative History Also Confirms That § 1641(d)(1) Was Intended Only To Eliminate Holder-In-Due-Course Protections. ...............................................................39

      4.     The Clear Majority And Better-Reasoned Case Law Holds That § 1641(d)(1) Does Not Provide An Affirmative Right Of Action Against Loan Assignees For A Lender's Alleged Misconduct. ..............................................45

C.     Even Assuming Maryland UCC § 3-306 Or 15 U.S.C. § 1641(d)(1) Authorized A Right Of Action Against A Loan Assignee, Plaintiffs' Actions Here Are Barred By The Applicable Statute Of Limitations. ......................................49

II.    The District Court Correctly Concluded That Plaintiffs May Not Sue Loan Servicers Holding Maryland Lender Licenses Under The SMLL Based Solely On Servicers' Collection Of Payments On Loans They Did Not Originate. ..........................................................53

III.  The District Court Correctly Concluded That No Cause Of Action Exists Under Maryland Law For The Alleged Failure Of An Assignee To Provide Documents Relating To A Mortgage Loan That Had Been Paid Off For More Than Three Years. ..........................................................60

IV.  The District Court Correctly Rejected Plaintiffs' Motions To Remand The *Nance* And *Tipton* Cases. ............................................................66

   A.  There Is Federal Question Jurisdiction In Both Cases Based On Plaintiffs' HOEPA Claims. ..............................................66

   B.  There Is Federal Bankruptcy Jurisdiction In Both Cases Based On Plaintiffs' Prior Bankruptcies. .......................................69

CONCLUSION ..................................................................................71

STATEMENT REQUESTING ORAL ARGUMENT ..........................................72

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. NVR Homes*,
    193 F.R.D. 243 (D. Md. 2000) ...........................................................................63

*Adcock v. Freightliner LLC*,
    550 F.3d 369 (4th Cir. 2008) ..............................................................................11

*American Well Works Co. v. Layne Bowler Co.*,
    241 U.S. 257 (1916) ...........................................................................................50

*Ashcroft v. Iqbal*,
    --- U.S. ---, 129 S.Ct. 1937 (2009) .....................................................................11

*Baker v. Century Fin.*, No. 01-0903-CV-W-SOW-ECF,
    2001 U.S. Dist. Lexis 24320 (W.D. Mo. Nov. 19, 2001) ....................................46

*Bank of New York v. Heath*,
    No. 98-CH-8721, 2001 WL 1771825 (Ill. Cir. Ct. Oct. 26, 2001)............... 46, 47

*Barnhart v. Sigmon Coal Co., Inc.*,
    534 U.S. 438 (2002) ...........................................................................................33

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................11

*Blondell v. Littlepage*,
    991 A.2d 80 (Md. 2010)......................................................................................62

*Blue v. Fremont Inv. & Loan*,
    562 F. Supp. 2d 33 (D.D.C. 2008) ......................................................................50

*Bryant v. Mortg. Capital Res. Corp.*,
    197 F. Supp. 2d 1357 (N.D. Ga. 2002) ......................................................... 48, 51

*Burgh v. Borough Council of Montrose*,
    251 F.3d 465 (3d Cir. 2001) ...............................................................................52

*CitaraManis v. Hallowell*,
    613 A.2d 964 (Md. 1992)....................................................................................65

*City of Chicago v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997) ...............................................................68

*Comer v. Pers. Auto Sales, Inc.*,
368 F. Supp. 2d 478 (M.D.N.C. 2005)...........................................44, 45

*Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*,
164 F. Supp. 2d 520 (D. Md. 2001) ....................................................15

*Crews v. Altavista Motors, Inc.*,
65 F. Supp. 2d 388 (W.D. Va. 1999)...................................................44

*Dash v. FirstPlus Home Loan Owner Trust 1996-2*,
248 F. Supp. 2d 489 (M.D.N.C. 2003)................................................46

*Davis v. Wilmington Fin., Inc.*,
No. PJM 09-1505, 2010 WL 1375363 (D. Md. Mar. 26, 2010) .......................52

*DeReggi Constr. v. Mate*,
747 A.2d 743 (Md. App. 2000) .....................................................64, 65

*Dowdy v. First Metro. Mortg. Co.*,
No. 01C7211, 2002 WL 745851 (N.D. Ill. Jan. 29, 2002)..........................46, 47

*Drew v. First Guar. Mortg. Corp.*,
842 A.2d 1 (Md. 2003) ...............................................................55

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd., P'ship*,
213 F.3d 175 (4th Cir. 2000) ........................................................62

*Eachen v. Scott Hous. Sys., Inc.*,
630 F. Supp. 162 (M.D. Ala. 1986)..................................................45

*Elm Grove Coal Co. v. Dir., O.W.C.P.*,
480 F.3d 278 (4th Cir. 2007) ........................................................27

*Estate of Davis v. Wells Fargo Bank*,
633 F.3d 529 (7th Cir. 2011) ........................................................52

*Faircloth v. Nat'l Home Loan Corp.*,
313 F. Supp. 2d 544 (M.D.N.C. 2003)..........................................46, 47, 48

*Faircloth v. Nat'l Home Loan Corp.*,
  87 F. App'x 314 (4th Cir. 2004) .......................................................................46

*Franchise Tax Bd. v. Lab. Vacation Trust*,
  463 U.S. 1 (1983) .........................................................................................67

*Grable & Sons Med. Prods., Inc. v. Darue Eng'g & Mfg. Co.*,
  547 U.S. 308 (2005) ................................................................................. 67, 68

*Grausz v. Englander*,
  321 F.3d 467 (4th Cir. 2003) ...........................................................................70

*Haley v. Corcoran*,
  659 F. Supp. 2d 714 (D. Md. 2009) .................................................................63

*Hand v. Mfrs. & Traders Trust Co.*,
  952 A.2d 240 (Md. 2008) ...............................................................................20

*Harvey v. EMC Mortgage Corp.*,
  No. 02-32412DWS, 2003 WL 21460063 (Bankr. E.D. Pa. June 9, 2003) .........46

*Holmberg v. Armbrecht*,
  327 U.S. 392 (1946) .......................................................................................52

*Homa v. Friendly Mobile Manor, Inc.*,
  612 A.2d 322 (Md. App. 1992) .......................................................................15

*Hood v. Aurora Loan Services*,
  No. CCB-10-11, 2010 WL 2696755 (D. Md. July 6, 2010) ................................52

*In re A.H. Robins Co. v. Dalkon Shield Claimants*,
  86 F.3d 364 (4th Cir. 1996) ............................................................................70

*In re Celotex Corp.*,
  124 F.3d 619 (4th Cir. 1997) ..........................................................................70

*In re Cmty. Bank of N. Virginia*,
  622 F.3d 275 (3d Cir. 2010) ...........................................................................52

*In re First Independence Capital Corp. v. Merrill Lynch*,
  181 F. App'x 524 (6th Cir. 2006) ....................................................................22

*In re Randall*,
358 B.R. 145 (Bankr. E.D. Pa. 2006) ................................................................51

*In re Thomas*,
No. 07-16445, 2008 WL 5412113 (Bankr. E.D. Pa. Oct. 17, 2008) ...................48

*In re World Metals, Inc. v. Huntington Nat'l Bank*,
313 B.R. 720 (Bankr. N.D. Ohio 2004) .............................................................22

*Interstate Petroleum Corp. v. Morgan*,
249 F.3d 215 (4th Cir. 2001) ............................................................................67

*Irby-Greene v. M.O.R., Inc.*,
79 F. Supp. 2d 630 (E.D. Va. 2000) ..................................................................44

*Jones v. Hyatt*,
741 A.2d 1099 (Md. 1999) .......................................................................... 24, 25

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
543 U.S. 50 (2004) ............................................................................................27

*LaBarre v. Credit Acceptance Corp.*,
175 F.3d 640 (8th Cir. 1999) ............................................................................43

*Lynch v. RKS Mortg. Inc.*,
588 F. Supp. 2d 1254 (E.D. Cal. 2008) ...............................................................5

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
243 F.3d 789 (4th Cir. 2001) ............................................................................52

*Master Fin., Inc. v. Crowder*,
972 A.2d 864 (2009) ...........................................................................................2

*McGraw v. Loyola Ford, Inc.*,
723 A.2d 502 (Md. App. 1999) .........................................................................64

*McLean v. United States*,
566 F.3d 391 (4th Cir. 2009) ............................................................................27

*Merrell Dow Pharm., Inc. v. Thompson*,
478 U.S. 804 (1986) ..........................................................................................50

*Michelin Tires Ltd. v. First Nat'l Bank of Boston*,
666 F.2d 673 (1st Cir. 1981) .......................................................... 36, 37

*Miller v. Pac. Shore Funding*,
224 F. Supp. 2d 977 (D. Md. 2002) ....................................... 23, 24, 25

*Miller v. Pac. Shore Funding*,
92 F. App's 933 (4th Cir. 2004) ............................................................23

*Mitchell v. Residential Funding Corp.*,
334 S.W.3d 477 (Mo. Ct. App. 2010) ..................................................48

*Moffitt v. Residential Funding, Co., LLC*,
604 F.3d 156 (4th Cir. 2010) ...................................................... 3, 12

*Mull v. Alliance Mortg. Banking Corp.*,
219 F. Supp. 2d 895 (W.D. Tenn. 2002) .............................................46

*Murr v. Selog Corp.*,
747 P.2d 1302 (Idaho Ct. App. 1987) ......................................... 35, 37

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ..................................................... 11, 12

*P.V. Props., Inc. v. Rock Creek Village Assocs., Ltd., P'ship*,
549 A.2d 403 (Md. App. 1988) ............................................................65

*P/T Ltd. II v. Friendly Mobile Manor, Inc.*,
556 A.2d 694 (Md. App. 1989) .................................................... 15, 16

*Pack Shack, Inc. v. Howard County*,
808 A.2d 795 (Md. 2002) ....................................................................56

*Parker v. Columbia Bank*,
604 A.2d 521 (Md. App. 1992) .................................................... 62, 63

*Petals Factory Outlet of Delaware, Inc. v. EWH & Assoc.*,
600 A.2d 1170 (Md. App. 1992) .........................................................15

*Petry v. Wells Fargo Bank, N.A.*,
597 F. Supp. 2d 558 (D. Md. 2009) ....................................................16

*Pinney v. Nokia, Inc.*,
   402 F.3d 430 (4th Cir. 2005) ...............................................................67

*Price v. Maryland*,
   835 A.2d 1221 (Md. 2003) ...................................................................55

*Pumphrey v. Kehoe*,
   276 A.2d 194 (Md. 1971) .....................................................................15

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997) ..................................................... 26, 27, 32

*Schmidt v. Beneficial Fin. Co.*,
   400 A.2d 1124 (Md. 1979) ...................................................................55

*Schwartz v. Bann-Corr Mortgage*,
   197 S.W.3d 168 (Mo. Ct. App. 2006) ..................................................51

*Sigmon Coal Co. v. Apfel*,
   226 F.3d 291(4th Cir. 2000) ................................................................33

*Silver Hill Station Ltd. P'ship v. HSA/Wexford Bancgroup, LLC*,
   158 F. Supp. 2d 631 (D. Md. 2001) .....................................................65

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) .............................................................................31

*State v. Pagano*,
   669 A.2d 1339 (Md. 1996) ...................................................................23

*Taylor v. NationsBank, N.A.*,
   776 A.2d 645 (Md. 2001) .....................................................................61

*Thoreson v. Shaffer*,
   683 A.2d 1153 (Md. App. 1996) ...................................... 55, 56, 58, 60

*Tucker v. Beneficial Mortg. Co.*,
   437 F. Supp. 2d 584 (E.D. Va. 2006) ..................................................50

*U.S. Bank Nat'l Ass'n v. Clark*,
   837 N.E.2d 74 (Ill. 2005) .....................................................................46

*United Overseas Bank v. Veneers, Inc.*,
  375 F. Supp. 596 (D. Md. 1974) ..................................................... 36, 37

*United States v. Childress*,
  104 F.3d 47 (4th Cir. 1996) ...............................................................22

*United States v. Ide*,
  624 F.3d 666 (4th Cir. 2010) ..............................................................27

*United States v. Langley*,
  62 F.3d 602 (4th Cir. 1995) ...............................................................38

*U.S. Airline Pilots Ass'n v. Awappa, LLC*,
  615 F.3d 312 (4th Cir. 2010) ..............................................................12

*Valley Historic Ltd. P'ship v. Bank of N.Y.*,
  486 F.3d 831 (4th Cir. 2007) ..............................................................70

*Vandenbroeck v. ContiMortgage Corp.*,
  53 F. Supp. 2d 965 (W.D. Mich. 1999) .................................... 46, 68, 69

*Wachtel v. West*,
  476 F.2d 1062 (6th Cir. 1973) ............................................................50

*Wahi v. Charleston Area Med. Ctr., Inc.*,
  562 F.3d 599 (4th Cir. 2009) ..............................................................12

*Willenbring v. United States*,
  559 F.3d 225 (4th Cir. 2009) ..............................................................27

*Williams v. Aries Fin., LLC*,
  No. 09-cv-1816, 2009 WL 3851675 (E.D.N.Y. Nov. 18, 2009).................. 23, 24

**Statutes**

12 U.S.C. § 2601 ..................................................................................63

15 U.S.C. § 1601 ..................................................................................28

15 U.S.C. § 1602(aa) ............................................................................28

15 U.S.C. § 1639 ..................................................................................28

15 U.S.C. § 1640(a) ................................................................. 30, 31, 32, 38

15 U.S.C. § 1640(e) ................................................................. 50, 51, 52

15 U.S.C. § 1641(a) ....................................................... 13, 30, 31, 32, 38

15 U.S.C. § 1641(d) ......................................................................... passim

15 U.S.C. § 1641(e) ............................................................... 31, 32, 38

15 U.S.C. § 1641(h) ..........................................................................13

28 U.S.C. § 1441 ...............................................................................70

28 U.S.C. § 1452 ...............................................................................70

Md. Code Ann., Com. Law § 3-118(g)(iii).......................................49

Md. Code Ann., Com. Law § 3-302 .................................................19

Md. Code Ann., Com. Law § 3-305 .......................................... passim

Md. Code Ann., Com. Law § 3-306 .......................................... passim

Md. Code Ann., Com. Law § 12-401 .............................................1, 3

Md. Code Ann., Com. Law § 12-405 ...............................................59

Md. Code Ann., Com. Law § 12-411 .......................................... 56, 57

Md. Code Ann., Com. Law § 12-413 ....................................... 54, 55, 57

1967 Md. Laws, Chapter 390, Sec. 1 § 62(a) .................................57

1967 Md. Laws, Chapter 390, Sec. 1 § 69...................................56

1975 Md. Laws, Chapter 49, Sec. 2, § 12-411 ..............................58

1975 Md. Laws, Chapter 49, Sec. 2, § 12-413 ..............................56

N.Y.U.C.C. Law §§ 3-301. ..............................................................24

N.Y.U.C.C. Law §§ 3-305. ..............................................................24

N.Y.U.C.C. Law §§ 3-306. ..............................................................24

## Regulations

16 C.F.R. § 433.2 ...............................................................42

24 C.F.R. § 3500.21(e)(2)(ii) ...........................................63

## Legislative History

H.R. Conf. Rep. 103-652 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1977 ..............39

S. Rep. No. 103-169 (1993), *reprinted in* 1994 U.S.C.C.A.N. 1881 ... 28, 39, 40, 41

## Other Authorities

11 Am Jur 2d., Bills & Notes, § 218........................................................20

40 Fed. Reg. (Nov. 18, 1975)........................................................... 42, 44

Hawkland & Lawrence, UCC Series § 30301:1 (1999) ..........................................36

## Rules

Federal Rules of Civil Procedure, Rule 12(b)(6) .....................................11

# STATEMENT OF THE ISSUES

1.     Whether Maryland Uniform Commercial Code (UCC) § 3-306 provides a borrower with an affirmative right of action against an assignee of a paid-off mortgage loan for statutory penalties based on a lender's alleged violations of the Maryland Secondary Mortgage Loan Law (SMLL), Md. Code Ann., Com. Law §§ 12-401, et seq.

2.     Whether 15 U.S.C. § 1641(d)(1) (a provision of the Truth In Lending Act (TILA), as amended by the Home Ownership and Equity Protection Act (HOEPA)) provides a borrower with an affirmative right of action against an assignee of a paid-off mortgage loan for statutory penalties based on a lender's alleged SMLL violations.

3.     If either § 3-306 or § 1641(d)(1) provides a borrower with an affirmative right of action against an assignee, whether that action here is time-barred by the applicable statute of limitations.

4.     Whether servicers of mortgage loans that were originated by third-party lenders may be held liable for an originating lender's alleged SMLL violations, because the servicer also holds a lender license issued by the State of Maryland.

5.      Whether Maryland law provides a borrower with a right of action against an assignee of a mortgage for failure to provide documents relating to a mortgage loan paid off more than three years earlier.

6.      Whether the district court properly denied motions to remand two cases where removal was based on claims that purportedly rest on a federal statute and are within the federal court's bankruptcy jurisdiction.

## STATEMENT OF FACTS

I.      **After Eight Years In Maryland State Court, Plaintiffs Plead New Class Claims Against Defendants, And Those Defendants Remove The Actions To Federal Court.**

These cases are the outgrowth of more than forty individual and putative class action lawsuits filed between 2001 and 2003 and consolidated in the Circuit Court for Baltimore City, Maryland.  After the voluntary dismissal of many of these cases, the Circuit Court dismissed the remaining complaints, finding that the claims were barred by a three-year statute of limitations.  The Maryland Court of Appeals later reversed the Circuit Court's dismissal in part, holding that a claim brought under the SMLL is a "statutory specialty" subject to a twelve-year limitations period.  *Master Fin., Inc. v. Crowder*, 972 A.2d 864 (Md. 2009).

Following the *Crowder* decision, Plaintiffs provided Defendants with amended pleadings or other papers in seven pending cases, *Hebb* (No. 11-1270),

*Fulmore* (No. 11-1281), *Ruble* (No. 11-1284), *Moffitt* (No. 11-1289), *Mitchell* (No. 11-1299), *Mohre* (No. 11-1304), and *Trojanowski* (No. 11-1316), that prompted Defendants to remove these cases to Maryland federal court. *See* JA 659, 927, 1042, 1150, 1458, 1758, 1852. Plaintiffs also filed several new state-court cases, which also were removed.[1] All of the cases were assigned to the Honorable J. Frederick Motz.

On May 3, 2010, a panel of this Court composed of Judges Wilkinson, Niemeyer, and Shedd affirmed Judge Motz's order denying the remand of *Moffitt*, *Fulmore*, and *Ruble*. *See Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156 (4th Cir. 2010).

In the various assigned cases, Plaintiffs' complaints alleged that they obtained second mortgage loans between September 1996 and August 2000 from lenders who allegedly violated Maryland's Secondary Mortgage Loan Law (SMLL), Md. Code Ann., Com. Law §§ 12-401, et seq., at the time the loans were made. Specifically, Plaintiffs claimed that when their loans were made, their lenders violated the SMLL by charging excessive fees and closing costs and failing to provide proper disclosures. *See, e.g.*, JA 1166-68, 1178-79 (*Moffitt* Third Am.

---

[1]    Among these subsequent cases were *Nance* (No. 11-1272) and *Tipton* (No. 11-1291), whose removal is at issue on this appeal. These cases were removed based on federal bankruptcy jurisdiction and Plaintiffs' allegations that HOEPA provides an affirmative cause of action against the Assignee Defendants. *See* JA 709-16 (*Nance* Notice of Removal); JA 1293-1302 (*Tipton* Notice of Removal).

Compl. ¶¶ 25-33, 68-73).   Plaintiffs likewise sought to hold three types of defendants liable: (1) the lenders themselves; (2) other defendants who are *not* alleged to have been involved in the origination of Plaintiffs' loans, in the collection of the fees and costs, or in providing any disclosures, but who are alleged to have purchased or been assigned one of the loans (the "Assignee Defendants"); and (3) certain third-party servicers of the loans (the "Servicer Defendants").   According to Plaintiffs' pleadings, all but one of these loans has been paid off.[2]

The Assignee and Servicer Defendants moved to dismiss these complaints, arguing that there was no viable legal theory on which they could be held liable for the originating lenders' alleged SMLL violations.   *See, e.g.*, *Fulmore*, Dkt. 155 (Omnibus Memorandum In Support Of The Defendants' Motions To Dismiss The Plaintiffs' Complaints).   At the conclusion of the argument on these motions, Judge Motz granted Plaintiffs' request for leave to amend their complaints to plead facts to support their contention that a provision of TILA, as amended by HOEPA, 15 U.S.C. § 1641(d)(1) applied to their loans.  JA 301.

---

[2]     The only case involving a loan which purportedly has not been paid off is *Rodwell* (No. 11-1277).   The cases on appeal concern claims against non-originating Assignee Defendants and Servicer Defendants (also referred to as "Defendants") only.

II.   **Plaintiffs File Amended Complaints Asserting Claims Against The Assignee Defendants For Their Lenders' Alleged SMLL Violations Based On Maryland UCC § 3-306 And, In Some Cases, 15 U.S.C. § 1641(d)(1).**

Following the hearing, Plaintiffs filed amended federal complaints, as well as several new state court actions that subsequently were removed to federal court and assigned to Judge Motz.  In these various complaints, Plaintiffs alleged that the Assignee Defendants could be held liable for an originating lender's conduct by application of either (1) the Maryland UCC § 3-306, Md. Code Ann., Com. Law § 3-306 or (2) 15 U.S.C. § 1641(d)(1)—which allegedly applies in some *but not all*—of the cases before this Court.  *See, e.g.*, JA 1169-73 (*Moffitt* Third Am. Compl. ¶¶ 39-52); JA 867-71 (*Rodwell* Second Am. Compl. ¶¶ 29-43).[3]  Plaintiffs also alleged that, to the extent that Defendants collected monthly payments on

---

[3]      In three of the eighteen cases on appeal, Plaintiffs have not alleged that HOEPA applies to any Plaintiff's loan.  *See Conway*, No. 11-1282; *Gephardt*, No. 11-1295; *Johnson*, No. 11-1308.  In three other cases, Plaintiffs allege that HOEPA applies to some Plaintiffs' loans but not others.  *See McLeod*, No. 11-1259 (L) (Newman); *Mohre*, No. 11-1304 (Floyd); *Mitchell*, No. 11-1299 (Mitchell).  And, in at least seven cases, there are no adequate factual allegations supporting the Plaintiffs' allegations that their loans are subject to HOEPA.  *See generally* JA 480-93 (*McLeod* Motion to Dismiss); JA 880-84 (*Rodwell* Motion to Dismiss); JA 961-87 (*Fulmore* Motion to Dismiss); JA 1076-91 (*Ruble* Motion to Dismiss); JA 1186-1220 (*Moffitt* Motions to Dismiss); JA 1348-61 (*Brewster* Motion to Dismiss); and JA 1639-67 (*Mitchell* Motions to Dismiss).  The failure to plead facts showing that their loans are subject to HOEPA precludes Plaintiffs from relying on § 1641(d) and provides an additional basis for dismissal of their actions.  *See, e.g.*, *Lynch v. RKS Mortg. Inc.*, 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008) (dismissing claim where the complaint failed to allege facts showing that the mortgage met HOEPA's threshold requirements).

behalf of third parties, Defendants are "lenders" under the SMLL and therefore could be held liable based on the originating lenders' conduct. *See, e.g.*, JA 1173-74 (*Moffitt* Third Am. Compl. ¶¶ 53-56); JA 871 (*Rodwell* Second Am. Compl. ¶¶ 44-47).[4]   Based on these allegations, relating only to their originating lenders' conduct, Plaintiffs sought statutory penalties, including treble damages, from Defendants. *See, e.g.*, JA 1181-84 (*Moffitt* Third Am. Compl. ¶¶ 81-87 and Prayer For Relief); JA 875-78 (*Rodwell* Second Am. Compl. ¶¶ 65-70 and Prayer For Relief).

Defendants then filed a second round of motions to dismiss, arguing that: (1) UCC § 3-306 does not provide an affirmative right of action against the Assignee Defendants for liability based upon an assignor's alleged conduct; (2) § 1641(d)(1) does not create an affirmative cause of action against the Assignee Defendants for a borrower where no action exists under state law; and (3) none of the Defendants are "lenders" as that term is defined by the SMLL. *See, e.g.*, *Rodwell*, Dkt. 64 (Omnibus Memorandum In Support Of The Defendants' Motions To Dismiss Amended Complaints).

---

[4]   Plaintiffs have abandoned and waived any argument that all Defendants are "lenders" who may be held liable under the SMLL directly. *See* AOB 51-56 (arguing only that the district court abused its discretion in denying leave to amend to assert SMLL claims against two Servicer Defendants in *Rodwell* (No. 11-1277) and *Mitchell* (No. 11-1299)).

### III. The District Court Dismisses Plaintiffs' Claims Under Maryland UCC § 3-306 And 15 U.S.C. § 1641(d)(1) Because Those Claims Are Not Sustainable Under The Language Of The Statutes And Controlling Law.

Following an extensive hearing (JA 501-78), Judge Motz issued his opinion (JA 579-91) providing that Defendants' motions would be granted and holding that:

- Section 3-306 does not provide an affirmative right of action by a borrower/obligor against a holder/assignee of an instrument for a lender's alleged conduct, but applies only to controversies between persons who have competing claims to ownership, possession, or payment from an instrument (JA 585-87);

- Section 1641(d)(1) of TILA as amended by HOEPA does not provide any borrower with an affirmative right of action against an assignee of a HOEPA loan for a lender's alleged conduct, but only eliminates special "holder-in-due-course" protections for HOEPA loan assignees (JA 587-91); and

- None of the Defendants are "lenders" as defined in the SMLL (JA 584-85).

Judge Motz did not, however, immediately enter orders or judgments implementing his rulings. Rather, he stated that the motions would be granted after he had conferred with counsel on various ancillary issues. JA 591. Judge Motz subsequently issued separate opinions in *Gephardt* (No. 11-1295) and *Johnson* (No. 11-1308), granting motions to dismiss where Plaintiffs had asserted, in addition to their SMLL claims, state-law claims based on an alleged failure to provide loan documents years after the loans had been paid off. JA 1421, 1846.

- 7 -

**IV.  The District Court Denies, As Futile, Two Requests For Leave To Amend To Assert SMLL Claims Against Servicer Defendants Who Also Are Licensed As "Lenders" By The State Of Maryland.**

After Judge Motz announced his ruling, Plaintiffs in *Rodwell* (No. 11-1277) and *Mitchell* (No. 11-1299) moved for leave to amend their claims against two of the Servicer Defendants—Litton Loan Servicing, L.P. and Bayview Loan Servicing, LLC.   Because these two Servicer Defendants obtained mortgage licenses from the State of Maryland and thereafter collected monthly payments, Plaintiffs claimed that each one met the definition of an SMLL "lender" and thus could be held directly liable for SMLL violations.  JA 895-917, 1720-53.[5]  Judge Motz denied these motions for leave to amend as futile.  JA 918-22.  Specifically, Judge Motz found that because the respective complaints contained no allegations that these two Servicer Defendants had violated the SMLL, they could not be held liable under the SMLL.  *Id.* at 921 ("A lender who has not yet violated the SMLL

---

[5]     Plaintiffs also had sued a Servicer Defendant in a third case, *Conway v. HSBC Mortgage Services, Inc.* (No. 11-1282).  *Conway* did not include any claim that HSBC Mortgage Services—the Servicer Defendant in that case—was vicariously liable for the alleged conduct of a lender based on either state or federal law.  *Conway* alleged only that HSBC Mortgage Services was a lender under the SMLL and therefore could be held liable for collecting interest after an originating lender's alleged misconduct.  Judge Motz's ruling stating that Defendants' motions to dismiss would be granted applied to *Conway* just as it did *Rodwell*, *Mitchell*, and the other cases on appeal, and *Conway* was dismissed on that basis.  However, the *Conway* Plaintiffs did not file any motion for leave to amend, and on appeal Plaintiffs do not raise any issue or argument that could support the reversal of *Conway*.  The *Conway* appeal accordingly should be dismissed.

- 8 -

is not restricted to the collection of the principal, so it would not commit a new violation by collecting interest.").

After this ruling, final judgments were entered in all eighteen cases presently on appeal, nine of them under Federal Rule of Civil Procedure 54(b). *See* JA 596, 655, 705, 795, 852, 923, 1009, 1039, 1146, 1285, 1323, 1372, 1421, 1453-54, 1754, 1801, 1846, 1928 (providing judgments). Plaintiffs subsequently filed their notices of appeal from these eighteen judgments, and their appeals were consolidated in this Court. JA 597, 656, 706, 796, 853, 924, 1010, 1040, 1147, 1286, 1325, 1373, 1422, 1455, 1755, 1802, 1846, 1929.

## SUMMARY OF THE ARGUMENT

Plaintiffs' principal complaint is that their originating lenders violated Maryland's SMLL by allegedly charging excessive fees for the loans and failing to provide a disclosure form at closing. Now, years later, Plaintiffs seek to hold Defendants liable for statutory penalties, including treble damages, based solely on their lenders' alleged violations. Plaintiffs do not allege that any Defendant was involved in either the origination of their loans or the alleged SMLL violations. Likewise, Plaintiffs do not allege that any Defendant commenced an action to enforce their loans or foreclose on any property. To the contrary, in all but one of the cases before this Court, Plaintiffs affirmatively allege that their loans are paid

off.  Nevertheless, Plaintiffs variously have claimed a right to bring an action for their lenders' alleged SMLL violations pursuant to (1) Maryland common law, (2) the SMLL, (3) the Maryland UCC, or (4) 15 U.S.C. § 1641(d).  No matter what their grounding, a fundamental flaw pervades Plaintiffs' arguments.

As Judge Motz correctly determined, in bringing their various claims, Plaintiffs fail to distinguish between: (1) a borrower's ability, in an enforcement action brought by a lender or assignee, to raise certain claims and defenses that would reduce or avoid an obligation to pay a debt instrument; and (2) a borrower's right to bring an affirmative claim for statutory penalties against the assignee of a paid-off mortgage loan based solely on the alleged conduct of the lender who originated the loan.  The distinction is critical to any alleged right to recover here.

Maryland and federal law generally recognize a borrower's ability, in an enforcement action brought by a lender or assignee, to raise any claims and defenses that would reduce or avoid an obligation to pay a debt instrument. Neither Maryland nor federal law, however, provides a borrower with a right to bring an affirmative claim for statutory penalties against the assignee of a paid-off mortgage loan based solely on the alleged misconduct of the lender who originated the loan.  Plaintiffs' claims against Defendants for derivative or vicarious liability, accordingly, were subject to dismissal and that result should be affirmed.

Plaintiffs' remaining arguments on appeal also lack merit. Judge Motz properly (1) denied Plaintiffs' requests for leave to amend their complaints to assert unfounded SMLL claims against two Servicer Defendants; (2) dismissed Maryland state-law claims against two Assignee Defendants for failure to provide Plaintiffs with copies of certain loan documents long after the loans were paid off; and (3) denied Plaintiffs' motions to remand two other cases that were properly removed given multiple grounds for federal jurisdiction.

## STANDARD OF REVIEW

This Court reviews *de novo* the dismissal of an action under Federal Rule of Civil Procedure 12(b)(6). *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009) (examining *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1943-44 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under Rule 12(b)(6), a complaint should be dismissed for failure to "state a claim upon which relief can be granted." A complaint fails to state a claim if the complaint: (1) lacks a cognizable legal theory; or (2) fails to allege sufficient facts to support a cognizable legal theory. *Id.* "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id.*; *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008).

Under *Twombly* and *Iqbal*, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet*, 591 F.3d at 255. The Court also disregards "'unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009)).

The district court's denial of leave to amend in the two servicer cases (*Rodwell* and *Mitchell*) is reviewed for abuse of discretion, and no such abuse can be found where a proposed amendment would be futile and have "no impact on the outcome of the motion to dismiss." *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 320 (4th Cir. 2010). Its denial of the motion to remand in *Tipton* and *Nance* is reviewed de novo and should be affirmed if the case could have been brought in federal court either (1) at the time of removal, (2) after the filing of an amended pleading in federal court, or (3) at the time a final judgment was entered. *See Moffitt*, 604 F.3d at 159.

## ARGUMENT

**I.    The District Court Correctly Concluded That Plaintiffs Have No Right Of Action Under State Or Federal Law Against The Assignee Defendants For The Alleged Conduct Of Plaintiffs' Lenders.**

At various times, Plaintiffs have alleged or argued that they can bring an action against the Assignee Defendants for their lenders' alleged SMLL violations pursuant to (1) Maryland common law, (2) the SMLL, (3) the Maryland UCC, or (4) the HOEPA provision codified at § 1641(d)(1).  None of these contentions is well founded.[6]

---

[6]    Although Plaintiffs' Opening Brief begins by arguing that the Assignee Defendants may be held liable by operation of § 1641(d)(1), the district court began with an analysis of Maryland state law, which is the only law allegedly applicable to all cases on appeal and which provides context for the proper construction of § 1641(d)(1).  The Defendants' Brief, accordingly, follows the analytical framework of the district court.

Defendants also note that Plaintiffs' Opening Brief appears to argue only that the Assignee Defendants may be held vicariously liable by operation of state or federal law.  Plaintiffs do not appear to argue that the Servicer Defendants may be held vicariously liable under either Maryland UCC § 3-306 or 15 U.S.C. § 1641(d)(1), and in any event, neither statute applies to create a right of action against the Servicer Defendants for the same reasons they fail to do so as to the Assignees.  *See also* 15 U.S.C. § 1641(h) (providing that a loan servicer "shall not be treated as an assignee" for purposes of TILA as amended by HOEPA).

### A. Maryland Law Does Not Support Plaintiffs' Actions Against Their Purported Loan Assignees.

#### 1. Plaintiffs Have Waived Any Argument Under Maryland Common Law, And Maryland Common Law Does Not Authorize An Action Against A Purported Loan Assignee Based Solely On A Lender's Alleged Conduct.

To begin with, Plaintiffs have abandoned and waived any claim or argument that they may sue the Assignee Defendants under Maryland common law. While Plaintiffs raised some arguments based on Maryland common law early in the proceedings below, their final amended complaints do not claim that the Assignee Defendants are liable by operation of the common law. *See, e.g.*, JA 945-49 (*Fulmore* Third Am. Compl. ¶¶ 38-52). Plaintiffs likewise did not raise any argument about Maryland common law in their written opposition to Defendants' motions to dismiss their amended complaints. *See, e.g.*, *Fulmore*, Dkt. 187 (opposition to motion to dismiss). Nor do Plaintiffs specifically raise an issue based on Maryland common law in their issues for appeal to this Court. *See, e.g.*, AOB 3-4 (raising six issues for appeal, but none concerning whether Maryland common law authorizes their action), 21-42 (arguing that Defendants are liable for lenders' alleged SMLL violations "by operation" of § 3-306 and § 1641(d)(1) but making no express argument based on the operation of Maryland common law).[7]

---

[7] Plaintiffs similarly have abandoned and waived any claim or argument that the SMLL itself provides a borrower with a right to sue a loan assignee for a lender's alleged SMLL violations. Indeed, Plaintiffs expressly concede that "the

Continued on following page

Despite their apparent waiver, Plaintiffs argue in passing that the district court's HOEPA analysis was predicated on an erroneous view of the common law in effect in 1994 (when HOEPA was enacted). *See* AOB 29-31. Even if considered, there is no merit to this assertion.

Under Maryland common law, "an assignment creates only an assignment of rights. For there to be a delegation of duties 'the assignee must *expressly assume* these duties, there being no implication of assumption by [a] mere assignment.'" *Petals Factory Outlet of Delaware., Inc. v. EWH & Assocs.*, 600 A.2d 1170, 1174 (Md. App. 1992) (quoting *Pumphrey v. Kehoe*, 276 A.2d 194 (Md. 1971)); *P/T Ltd. II v. Friendly Mobile Manor, Inc.*, 556 A.2d 694, 697 (Md. App. 1989) ("[T]here is no implied assumption by an assignee of his assignor's obligations under the original contract merely by virtue of the assignment."). Rather, "[t]o be liable for duties under contract, the assignee must have assumed liability expressly." *Homa v. Friendly Mobile Manor, Inc.,* 612 A.2d 322, 330 (Md. App. 1992); *see also Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F. Supp. 2d 520, 537 (D. Md. 2001) ("Maryland law is clear that

---

Continued from previous page
SMLL, by itself, does not provide for such derivative liability." *E.g.*, JA 945-49 (*Fulmore* Third Am. Compl. ¶¶ 38-52); *Fulmore*, Dkt. 187 (opposition to motion to dismiss); AOB 25.

parties to an agreement can assign the benefits which flow from the agreement without also assigning the liabilities.").

The Maryland Court of Special Appeals specifically explained the presumption under Maryland law that an assignee is deemed *not* to have assumed any duties of the assignor unless there is an express intention to accept those duties made clear in the contract:

> Under the common law, by the great weight of authority, the assignee of rights, benefits, or privileges under a contract did not become responsible for the assignor's duties unless he expressly assumed performance of those duties.  In other words, in the absence of an express manifestation of intention to accept the assignor's duties along with his rights and benefits, the assignee is presumed not to assume those duties, and they remain the obligation of the assignor.

*P/T Ltd. II*, 556 A.2d at 699-700; *see also Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 565 (D. Md. 2009) (dismissing on motion to dismiss claims for assignee liability under Maryland Finder's Fee Act and Consumer Protection Act because "Maryland courts have not yet extended the scope of … assignee liability to statutes providing for civil liability where the statute does not expressly impose this additional avenue of liability").[8]  Accordingly, there is no conceivable basis for common law assignee liability in this case.

---

[8]    The cases cited in Plaintiffs' Opening Brief (AOB 29-32) do not contradict these settled principles.  Nor do they support Plaintiffs' ability to sue the Assignee Defendants for statutory damages based on the lenders' alleged SMLL violations.  Those authorities: (1) concern the *enforcement* of mortgages (and, in one case, a

Continued on following page

### 2. Maryland UCC § 3-306 Does Not Authorize An Action Against A Purported Loan Assignee Based Solely On A Lender's Alleged Conduct.

Early in the proceedings below, Plaintiffs argued that Maryland UCC § 3-305 provides a right of action against the Assignee Defendants for their lenders' alleged SMLL violations. In their final amended complaints, Plaintiffs changed theories and contended that § 3-306, not § 3-305, provides such an affirmative right. Their arguments in this Court focus on § 3-306 as well. AOB 45-50. Section 3-306, particularly when read in conjunction with § 3-305, manifestly does not authorize a suit against a loan assignee for statutory damages based on a lender's alleged conduct.

Sections 3-305 and 3-306 are part of a subtitle of the Maryland UCC that governs the *enforcement* of negotiable instruments by holders of such instruments and certain other non-holders. *See* Md. Code Ann., Com. Law Subtitle 3 ("Enforcement of Instruments"). Section 3-305 in particular lists the claims and

---

Continued from previous page

lease) by assignees; (2) recognize that an assignee's ability to enforce notes, mortgages, and other instruments ordinarily is subject to certain equitable claims and defenses; and (3) hold that an assignee takes no greater title in a note, mortgage, or other instrument than that of the assignor. For similar reasons, Plaintiffs' contention that the district court erred in relying on *P/T Ltd. II* and *Homa* is without merit. These cases (and many others) recognize Maryland's common law rule against holding an assignee liable for the alleged misconduct of an assignor, absent pleading and proof of an express assumption of the assignor's duties.

defenses that a borrower/obligor may assert in an action to enforce a negotiable instrument to reduce or avoid payment on an obligation.  Md. Code Ann., Com. Law § 3-305.  Thus:

- Section 3-305(a)(1) states that an assignee/holder is subject to certain enumerated defenses, including (i) infancy, (ii) duress, lack of legal capacity, or illegality of the transaction, (iii) fraudulent inducement, and (iv) discharge;

- Section 3-305(a)(2) says that an assignee/holder may be subject to additional contract defenses asserted by the obligor;

- Section 3-305(a)(3) says that an assignee/holder also may be subject to a "claim in recoupment" based on a claim against the original payee arising from the underlying transaction that created the note; and

- Section 3-305(b) provides that a "holder in due course" is *not* subject to any defense provided under § 3-305(a)(2) or any claim in recoupment provided under § 3-305(a)(3).

Md. Code Ann., Com. Law § 3-305(a) & (b).[9]

---

[9]    Section 3-305(a) and (b) provides:

(a)    Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1)    A defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(2)    A defense of the obligor stated in another section of this title or a defense of the obligor that would be available if the person entitled

Continued on following page

In other words, in an action brought by an assignee/holder of a negotiable instrument (such as a note), any defense enumerated in § 3-305(a)(1) can be asserted by a borrower/obligor against any assignee/holder of the instrument to either reduce or avoid the obligation to pay. Further, a defense or a "claim in recoupment" provided by §§ 3-305(a)(2) or (a)(3) may be asserted against any assignee/holder who is not a "holder in due course." Holders in due course receive special protections and may enforce an obligation to pay an instrument free of defenses and claims in recoupment that a borrower might otherwise be able to invoke against an originating lender or assignee/holder who is *not* a "holder in due course."[10]

---

Continued from previous page

to enforce the instrument were enforcing a right to payment under a simple contract; and

(3)    A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

(b)    The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder.

[10]    A holder in due course is a holder of a negotiable instrument (such as a note) "who meets certain qualifications and is thus entitled to enforce an instrument free of most claims and defenses." 11 Am Jur 2d., Bills & Notes, § 218; Md. Code Ann. Com. Law § 3-302 (qualifications for "holder in due course" status). "The

Continued on following page

The "claim in recoupment" permitted by § 3-305(a)(3) against an assignee/holder who is not a holder in due course consequently is a *defense* to the right of the assignee/holder to enforce the note.  The defensive nature of this claim is underscored by the statute's express limitation that the claim in recoupment may be asserted "only to reduce the amount owing on the instrument at the time the action is brought."  The intended defensive limitation also is made clear by Official Comment 2, providing that "[i]f [the obligor] had already partially paid the note, [the obligor] is not entitled to recover the amounts paid.  The claim can be used only as an offset to amounts owing on the note."  Md. Code Ann., Com. Law § 3-305 off. cmt. 3.

Given its defensive purpose and intent, Plaintiffs apparently realized that § 3-305 could not be read to support an affirmative claim against the Assignee Defendants.  Therefore, they shifted their attention to § 3-306.  Yet, Plaintiffs' shift to § 3-306 is, as the district court put it, "perplexing."  JA 587.  The section, by its plain terms, does not address the claims and defenses of any borrower/obligor against an assignee/holder in any context.

_____

Continued from previous page
holder-in-due-course concept is an exception to the common-law rule that a purchaser can acquire no better title than the transferor had."  11 Am Jur 2d., Bills & Notes, § 237. Thus, a holder in due course may enforce a borrower's obligation to pay on an instrument even though the borrower has certain claims and defenses that might be good against the holder's assignor. Md. Code Ann., Com. Law § 3-305; *Hand v. Mfrs. & Traders Trust Co.*, 952 A.2d 240 (Md. 2008).

Section 3-306 instead provides that "[a] person taking an instrument, other than a person having rights of a holder in due course, is subject to a *claim of a property or possessory right in the instrument or its proceeds*, including a *claim to rescind a negotiation and to recover the instrument or its proceeds*. A person having rights of a holder in due course takes free of the claim to the instrument." Md. Code Ann., Com. Law UCC § 3-306.

Thus, § 3-306 is concerned exclusively with claims of *ownership or possession* of a note or other instrument or the proceeds of such a note or instrument, including claims to rescind a negotiation of a note instrument from one holder to another or to recover proceeds that should have been paid to a party with a superior claim to ownership or possession of the note or instrument. In other words, the "claims" referenced in § 3-306 are claims over who is the proper owner, possessor, and payee of a note or instrument. As the Official Comment to § 3-306 observes, "[c]laims to an instrument under Section 3-306 are different from claims in recoupment referred to in Section 3-305(a)(3)." Md. Code Ann., Com. Law § 3-306 off. cmt.

Here, however, Plaintiffs do not allege any claims of ownership, possession, or right of payment in *any instrument*, nor do they allege that they (rather than the lender or an assignee/holder or some third-party) are the proper payees of any note. Instead, Plaintiffs' claims against the Assignee Defendants are affirmative claims

- 21 -

for statutory penalties based on the alleged conduct of lenders. Section 3-306 is simply not relevant to such a claim.

Cases construing § 3-306 are to the same effect. They establish that the section does not create an affirmative right of action against assignees. *See, e.g.*, *In re World Metals, Inc.*, 313 B.R. 720, 729 (Bankr. N.D. Ohio 2004) ("[Section 3-306] does not, by itself, create an affirmative claim for relief. Instead, that statutory provision merely states that an ordinary holder (as opposed to, a holder in due course) takes an instrument subject to certain defenses."); *In re First Independence Capital Corp.*, 181 F. App'x 524 (6th Cir. 2006) (§ 3-306 serves only to invalidate a potential defense).

Finally, as discussed above, § 3-305 sets clear limits on the nature of the claims and defenses that the payor may assert against the payee's assignee. Accordingly, if Plaintiffs' view that § 3-306 creates *unlimited* assignee liability for any affirmative claim against an assignee based on the assignor's conduct were accepted, the carefully balanced limitations on claims against assignees in §§ 3-305(a)(3) and 3-305(b), adopted simultaneously with UCC § 3-306, would be rendered meaningless. That result, in turn, cannot be squared with settled principles of statutory construction. *See United States v. Childress*, 104 F.3d 47, 52 (4th Cir. 1996) ("[a] well-recognized canon of construction requires courts to read statutory provisions so that, when possible, no part of the statute is

superfluous"); *State v. Pagano,* 669 A.2d 1339, 1341 (Md. 1996) ("We seek to read statutes 'so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory.'") (citations omitted).

In support of their far more expansive reading of § 3-306, Plaintiffs cite two cases: an unpublished New York case, *Williams v. Aries Financial, LLC*, No. 09-cv-1816, 2009 WL 3851675 (E.D.N.Y. Nov. 18, 2009), and *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). Neither case is relevant to the issues raised here.

*Williams* contains no analysis of assignee liability under New York, much less Maryland, law. There, a borrower who had fallen behind on payments of a refinanced mortgage loan brought suit against the originator of the refinanced mortgage loan and a subsequent assignee alleging a civil conspiracy to commit fraud, as well as violations of TILA, the federal Real Estate Settlement Procedures Act, and various other state statutes and common law doctrines. The assignee defendant sought dismissal on the narrow and limited ground that Williams failed to allege facts suggesting that the assignee was not a holder in due course of Williams' mortgage loan. Given this specific argument, *Williams* did not purport to adjudicate, much less decide, whether New York's UCC § 3-306 authorizes a right of action against an assignee for a lender's misconduct. The case thus sheds

no light on the assignee liability issues presented in this appeal under Maryland law.[11]

As with *Williams*, *Miller* adds nothing relevant to the specific questions raised here. Plaintiffs extract a single statement from *Miller*—that assignors "are subject to the same claims or defenses as [the lender], unless they can raise a holder-in-due-course defense" to support their assertion that § 3-306 provides an affirmative cause of action against a loan assignee. *See* AOB 5-6, 8, 45, 49-50 (quoting *Miller*, 224 F. Supp. 2d at 996). But the referenced statement in *Miller* is *dicta*, as the assignee defendants in *Miller*, as in *Williams*, did not raise the issue of assignee liability. Furthermore, the referenced *dicta* comes from a passage: (1) holding that a borrower lacks Article III standing to sue a party who does not make or hold the borrower's loan; (2) containing no discussion of § 3-306; and (3) citing only a single Maryland case, *Jones v. Hyatt*, 741 A.2d 1099, n.8 (Md.

---

[11]     Additionally, as Judge Motz observed, New York's § 3-306 is not the same provision found in Maryland's Commercial Code. New York adopted and retains today the 1972 version of Article 3 of the UCC (the "1972 Version"). N.Y.U.C.C. Law §§ 3-301, et seq. (McKinney 2001). Effective January 1, 1997, Maryland adopted the *revised* version of the UCC, currently codified in §§ 3-305 and 3-306. In their brief, Plaintiffs argue that the differences between New York UCC §§ 3-305 and 3-306 and Maryland UCC §§ 3-305 and 3-306 are not material. But their "no differences" argument misses the point. No version of §§ 3-305 or 3-306 purports to authorize an affirmative right of action by a borrower/obligor against an assignee/holder for statutory penalties for a lender's alleged conduct. Indeed, the sections would be written very differently if they were intended to have such an expansive effect.

1999), which deals with the statute of limitations applicable to affirmative actions brought by assignees of legal claims arising from an automobile accident. *Miller's* reasoning thus sheds no light on the particular issues of assignee liability presented here.

In short, Plaintiffs do not have any affirmative right under § 3-306 to sue the Assignee Defendants for their lenders' alleged SMLL violations. The judgments of the district court dismissing that claim should be affirmed.[12]

### B. HOEPA Does Not Provide An Affirmative Right Of Action For A Borrower Against A Purported Loan Assignee Based Solely On A Lender's Alleged Conduct.

In their final amended complaints, several Plaintiffs invoked 15 U.S.C. § 1641(d)(1), a provision of TILA, as amended by HOEPA, to support a right of action against the Assignee Defendants for their lenders' alleged SMLL violations

---

[12]    The Maryland Court of Appeals recently granted certiorari in four cases that, among other issues, raise questions concerning whether Maryland's common law or § 3-306 provides a basis to assert affirmative claims arising under Maryland's SMLL against assignees of mortgage loans. *Polek v. J.P. Morgan Chase Bank, N.A.*, No. 24 (Md. review granted June 17, 2011); *Dinnis v. J.P. Morgan Chase Bank, N.A.,* No. 25 (Md. review granted June 17, 2011); *Kinsey v. J.P. Morgan Chase Bank, N.A.,* No. 26 (Md. review granted June 17, 2011); *Schultz v. Citimortgage, Inc.*, No. 38 (Md. review granted June 17, 2011). These cases also involve threshold issues on whether the originating lenders' conduct violates the SMLL. Accordingly, the Court of Appeals may not even reach any issues of assignee liability. If the court elects to do so, however, there is no reason to believe that a possible holding concerning § 3-306—the *only non-abandoned* state law basis for assignee liability urged in these cases—will be any different than the one reached by Judge Motz given the express language of § 3-306, applicable principles of statutory construction, and relevant case law.

- 25 -

regardless of whether Maryland law imposes such vicarious liability.  On appeal, they do the same.  Judge Motz rejected Plaintiffs' attempts to redraft § 1641(d)(1) to provide an independent, affirmative right of action against an assignee for a lender's alleged conduct.  That ruling comports with the section's plain language and settled principles of statutory construction.

As discussed below, in enacting HOEPA, Congress sought to eliminate holder-in-due course protections in the case of certain mortgage loans.  While HOEPA's enactment limited the protections available to an assignee in a suit by a borrower, it did not create a new affirmative claim for vicarious liability for statutory damages and penalties where no vicarious liability otherwise existed under state or federal substantive law.

> 1.    **By Its Plain Terms, § 1641(d)(1) Only Concerns An Assignee's Rights In A Loan Instrument And Eliminates Special Protections That Might Otherwise Apply.**

Both sides agree that the reach of § 1641(d)(1) is a matter of statutory construction.  Yet, Plaintiffs refrain from any discussion of the legal principles that control the construction of a statute.  *See* AOB 23-29.  In matters of statutory interpretation, a court begins with the text of the statute and must determine whether the statute "has a plain and unambiguous meaning with regard to the particular dispute in the case."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

In ascertaining that plain meaning, a court uses a "holistic" approach. *Willenbring v. United States*, 559 F.3d 225, 236 (4th Cir. 2009) (quoting *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) ("Statutory construction is a holistic endeavor.")). Thus, it does not "review" a single word or phrase in "isolat[ion]" or a "vacuum." *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010). Rather, "the plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 340-41; *see also McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009) (same).

Further, if a contextual approach reveals two plausible but different interpretations of statutory language, the court may look to intrinsic and extrinsic sources of meaning, including "the overall statutory scheme, legislative history, the history of evolving congressional regulation in the area, and a consideration of other relevant statutes." *Elm Grove Coal Co. v. Dir., O.W.C.P.*, 480 F.3d 278, 293-94 (4th Cir. 2007) (internal quotations omitted).

Here, an examination of the plain language of § 1641(d)(1), read in its entirety and considered in context, reveals the statute's plain meaning. By its terms, § 1641(d)(1) does not provide a borrower with an affirmative cause of action against a loan assignee but only limits the rights of the assignee in the notes

and instruments that it acquires, rendering the assignee subject to the claims and defenses that could be asserted against any "ordinary" holder (not in due course).

HOEPA amends TILA, 15 U.S.C. § 1601, et seq. to define a class of non-purchase, non-construction, closed-end loans with high interest rates or upfront fees as "High Cost Mortgages." *See* 15 U.S.C. § 1602(aa). To ensure that consumers understand the terms of such loans and are protected from high-pressure sales tactics, HOEPA requires creditors that originate and make HOEPA loans to provide a special, streamlined High Cost Mortgage disclosure three days before consummation of the transaction. *See* 15 U.S.C. § 1639.

HOEPA also prohibits High Cost Mortgages from including certain terms such as prepayment penalties and balloon payments that have proven particularly problematic. 15 U.S.C. § 1639. Finally, HOEPA "eliminates 'holder-in-due-course' protections for assignees of High Cost Mortgages." *See* S. Rep. No. 103-169, at 25 (1993), *reprinted in* 1994 U.S.C.C.A.N. 1881, 1912. Specifically, HOEPA provides:

**(d) Rights upon assignment of certain mortgages**

**(1) In general**
Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter,

the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a [High Cost Mortgage] referred to in section 1602(aa) of this title.  The preceding sentence does not affect rights of a consumer under subsection (a), (b), or (c) of this section or any other provision of this subchapter.

HOEPA, Pub. L. 103-325, Title 1, § 153(c), 108 Stat. 2195 (Sept. 23, 1994),

*codified at* 15 U.S.C. § 1641(d)(1).

Contrary to Plaintiffs' briefing, § 1641(d)(1)'s plain language does *not* purport to authorize an affirmative right of action by a borrower against an assignee of a HOEPA loan.  Rather, the language involves an assignee's rights with respect to mortgage loans that fall within HOEPA's ambit.  And, when read in context, the section's focus on assignees' rights to enforce negotiable instruments within HOEPA is further evidenced by:

(1)    Section 1641(d)'s heading, which expressly refers to "[r]ights upon assignment of certain mortgages";

(2)    Section 1641(d)(1)'s subject—voluntary assignees, *i.e.*, "[a]ny person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title";

(3)    Section 1641(d)(1)'s directive that a person "who purchases or is otherwise assigned" a mortgage within HOEPA's ambit takes it "subject to all claims and defenses" that a consumer "could assert against the creditor of the mortgage."

*See* 15 U.S.C. § 1641(d)(1).

The plain language of subparts 1641(d)(2) and (3) further belies any contention that § 1641(d)(1) creates an affirmative right of action against assignees

- 29 -

beyond the scope of those actions otherwise authorized against an assignee under federal or state law. Those subparts collectively address how § 1641(d)(1) operates in conjunction with TILA's assignee liability provision (§ 1641(a)) and "all other causes of action" authorized against assignees by federal or state law. Section 1641(d)(2) places strict limits on damages in (1) an action against an assignee under §§ 1640 and 1641(a) "based upon" a violation of TILA and (2) "all other causes of action" that are authorized against assignees by federal or state law and "made permissible" by the elimination of holder-in-due-course protections under § 1641(d)(1). 15 U.S.C. § 1641(d)(2). Section 1641(d)(3) additionally provides that damages against assignees for any TILA violations shall offset any damages for all other causes of action. The language of both provisions thus is consistent with a construction of § 1641(d)(1) that eliminates special holder-in-due-course protections, but does not create any new affirmative right of action against assignees beyond the scope of those rights of action otherwise authorized against an assignee under federal or state law.

Other TILA provisions likewise provide important context for § 1641(d)(1) and show that, when Congress intends to authorize a right of action by a borrower against an assignee for a lender's alleged conduct and violations of the law, it does so unequivocally, not obliquely. Thus:

- Section 1640(a) provides that "any creditor who fails to comply with any requirement imposed under [15 U.S.C. part B] with

respect to any person *is liable to such person* in an amount equal to the sum of…";

- Section 1641(a) provides that "any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor *may be maintained against any assignee* of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary"; and

- Section 1641(e) provides that "any civil action against a creditor for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property *may be maintained against any assignee* of such creditor only if…[.]"

15 U.S.C. §§ 1640(a), 1641(a), 1641(e) (emphasis added).

Indeed, a simple comparison of the differences between the text of these three provisions and § 1641(d)(1) belies Plaintiffs' claim that Congress intended § 1641(d)(1) to authorize an affirmative right of action by borrowers against HOEPA loan assignees. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (when "Congress uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended").

Plaintiffs nevertheless contend that § 1641(d)(1) clearly establishes an affirmative right for a borrower to assert claims against assignees for lenders' alleged misconduct. *See* AOB 23-25. This assertion is flawed in multiple respects.

- 31 -

*First,* Plaintiffs improperly focus on the word "claims" in isolation and fail to consider the specific context in which that term is used in § 1641(d)(1). *Second,* Plaintiffs fail to note the manner in which the statutory text actually addresses assignees' rights to enforce negotiable instruments that fall within HOEPA's ambit and not consumers' rights to initiate an action against assignees for lenders' misconduct. *Third,* Plaintiffs do not account for the structural and language differences between § 1641(d)(1) and §§ 1640(a), 1641(a) and 1641(e). *Fourth* and finally, Plaintiffs incorrectly assume that no legal difference exists between: (1) a statute that eliminates special holder-in-due-course protections for assignees by providing that an assignee take assignment of a HOEPA loan "subject to" all "claims" and "defenses" that could be asserted against a creditor; and (2) a statute expressly authorizing an affirmative right of action by consumers against assignees for any conduct by a lender in connection with the origination of a mortgage loan. That assumption is not sustainable given the entire statutory text.

In sum, because the plain language of TILA, as amended by HOEPA, only delineates the rights of assignees of HOEPA loans, eliminates "holder-in-due-course" protections, and does not independently provide a borrower with an affirmative right of action, the district court's judgment of dismissal can be affirmed for this reason alone. *See Robinson*, 519 U.S. at 340 ("Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is

coherent and consistent.'"); *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 305 (4th Cir. 2000), *aff'd*, *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002) (There exists "a strong presumption that Congress expresses its intent through the language it chooses.  Therefore, when the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it.") (citation and internal quotations marks omitted).

### 2.    The Context Surrounding The Enactment Of § 1641(d)(1) Confirms That The Statute Only Eliminates Holder-In-Due-Course Protections For Loan Assignees.

Even if the Court elects to look further to the context surrounding the statute's enactment, that contextual look confirms that § 1641(d)(1): (1) delineates the rights of HOEPA loan assignees; (2) eliminates "holder-in-due-course" protections; and (3) does not authorize an affirmative cause of action for a borrower.

When Congress enacted HOEPA in September 1994, it did so against a backdrop of nearly uniform state commercial law that provided holders in due course with special protections from claims and defenses that an obligor could raise in an enforcement action to reduce or avoid payment on the instrument. Numerous states had enacted UCC provisions that expressly addressed (1) the rights of an assignee/holder of a negotiable instrument to enforce obligations to pay the instrument and (2) the possible claims and defenses that the

borrower/obligor could raise in an enforcement action to reduce or avoid payment on the instrument. *See* pp. 17-25, *supra*. These UCC provisions also conferred a preferred legal status upon an assignee/holder who qualified as a holder in due course, as well as additional statutory rights and protections that allowed the holder in due course to enforce an instrument free from various claims and defenses that otherwise could have been asserted in an enforcement action. For example, the 1972 versions of §§ 3-305 and 3-306 addressed the enforcement of notes and other instruments and provided in pertinent part as follows:

> **UCC § 3-305. Rights of a Holder in Due Course.**
> To the extent that a holder is a holder in due course *he takes the instrument free from*
>
> (1)  *all claims to it* on the part of any person; *and*
>
> (2)  *all defenses* of any party to the instrument with whom the holder has not dealt except …

(emphasis supplied).

> **UCC § 3-306. Rights of One Not Holder in Due Course.**
> Unless he has the rights of a holder in due course *any person takes the instrument subject to*
>
> (a)  *all valid claims to it* on the part of any person; and
>
> (b)  *all defenses* of any party which would be available in an action on a simple contract …

(emphasis supplied).

UCC § 9-318(1) similarly referred to an assignee's ability to enforce obligations to pay, subject to defenses and claims arising from the obligation itself:

> (1)    Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in § 9-206 *the rights of an assignee are subject to*
>
> > (a)    all the terms of the contract between the account debtor and assignor and *any defense or claim* arising therefrom; and
> >
> > (b)    *any other defense or claim* of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

(emphasis supplied).

At the time of HOEPA's enactment, the prevailing case law interpreting the existing UCC provisions also established that the statutory language concerning "any" and "all" "claims" and "defenses": (1) referred to the possible recoupment claims and defenses that an obligor could raise in an enforcement action to reduce or avoid payment on the instrument; and (2) did *not* create any affirmative right of action against an assignee or alter established statutory or common law rules requiring that an assignee's assumption of a lender's liabilities be express.  *See, e.g.*, *Murr v. Selag Corp.*, 747 P.2d 1302 (Idaho Ct. App. 1987) (the effect given to "subject to" in former UCC § 3-306 is that the obligor may assert setoffs against a debt or may have defenses that make the note uncollectible, but the obligor cannot make affirmative claims for damages against the note assignee based upon some

tort or breach of contract by the original payee); *Michelin Tires Ltd. v. First Nat'l Bank of Boston*, 666 F.2d 673 (1st Cir. 1981) (the reference in former UCC § 9-318(1)(a) to an assignee's being subject to claims and defenses does not create affirmative rights against an assignee; nothing in the words "subject to" in their ordinary use would even hint at the creation of affirmative rights); *see also Hawkland & Lawrence*, *UCC Series* § 3-301:1 (1999) ("[Former] Section 3-306 sets forth the claims and defenses available to the obligor *to defeat recovery* by a party not having the rights of a holder in due course.") (emphasis supplied).

*United Overseas Bank v. Veneers, Inc.*, 375 F. Supp. 596, 606-10 (D. Md. 1974), illustrates the prevailing view.  There, in analyzing the original version of UCC § 3-306, the court noted the distinction between a defensive claim of recoupment (in which the obligor raises a defense to the enforcement action of an assignee based on a claim against the assignor arising from the same transaction that gives rise to the enforcement action) and a defensive claim of setoff (which may be based on a claim extrinsic to the transaction underlying the assignee's claim against the obligor).  *Id.* at 606 n.1A.  The court held that under Maryland's UCC, the obligor had no right to assert setoff against the transferee of a negotiable instrument, but could assert a claim of recoupment.  *Id.* at 609-10.  *United Overseas Bank's* holding—that an obligor may not assert a claim for a setoff against an assignor under Maryland's UCC—shows why (1) statutory language

under the UCC concerning "all claims and defenses" was understood to refer to the possible recoupment claims and defenses that the obligor could raise in an enforcement action to reduce or avoid payment on the instrument, and (2) such statutory language did not create any affirmative claim by an obligor against an assignee.[13]

In their briefing, Plaintiffs ignore this backdrop and confine their arguments to assertions that *Murr*, *United Overseas Bank*, and *Michelin Tires* involve facts different from those alleged here. *See* AOB 35-39. But, notwithstanding any perceived factual differences, the reasoning in each of these cases provides the relevant context and substantiates the construction of § 1641(d) that Judge Motz adopted and the Assignee Defendants advance.

Plaintiffs also offer their own misdirected argument concerning the state of the law in 1994 when HOEPA was enacted. *See* AOB 32-33. Plaintiffs claim that

---

[13]    The current version of Maryland's UCC § 3-305, adopted and enacted in Maryland and many states after HOEPA, also illuminates the meaning of § 1641(d)(1)'s "claims and defenses" language and shows that assignees of negotiable instruments who are *not* entitled to the preferred status of "holders in due course" *are* subject to "claims" and "defenses" that an obligor could raise *in an enforcement action* to reduce or avoid payment on the instrument. *See* Md. Code Ann., Com. Law §§ 3-305(a)(1)(enumerating defenses that may be asserted in an action to enforce a note or other instrument by an obligor against any holder including a holder in due course); 3-305(a)(2) (addressing other defenses that may be asserted in an action to enforce a note or other instrument by an obligor against a party who is not a holder in due course); 3-305(a)(3)(specifying that a limited "claim in recoupment" can be brought in an action to enforce a note or other instrument by an obligor against a party who is not a holder in due course).

Congress was aware of the SMLL and other state statutes authorizing rights of action against lenders for statutory violations when it drafted and enacted § 1641(d)(1). While it is true that Congress is *presumed* to enact legislation with knowledge of the existing law, *see United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995), there is no evidence that Congress enacted § 1641(d) with the SMLL or any similar state statute in mind. Nothing in the language of the federal statute itself evidences an intent to provide a right of action against an assignee for every alleged violation of state statute by an originating lender, and, if Congress had intended that result, it would have drafted its amendment to § 1641 to make that result as express and unequivocal as 15 U.S.C. §§ 1640(a), 1641(a), and 1641(e)'s authorization of a federal action against an assignee for certain lender violations of TILA. It did not.

As a result, both the language of the statute and the context surrounding its enactment end any debate about § 1641(d)(1)'s meaning and effect. But even if the Court were to find some ambiguity after these inquiries, consideration of HOEPA's legislative history also confirms that § 1641(d)(1) simply eliminates "holder-in-due-course" protections and nothing more.

### 3. The Legislative History Also Confirms That § 1641(d)(1) Was Intended Only To Eliminate Holder-In-Due-Course Protections.

According to the Senate report on the HOEPA legislation, the amendment to 15 U.S.C. § 1641(d) "eliminates *'holder in due course' protections* for assignees of High Cost Mortgages."  S. Rep. No. 103-169, at 28 (1993) (emphasis added), *reprinted in* 1994 U.S.C.C.A.N. 1881, 1912; *see also* H.R. Conf. Rep. 103-652 at 127 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1977, 1993 (15 U.S.C. § 1641(d) "eliminates holder-in-due-course protections for purchasers and assignees" of High Cost Mortgages).  The Senate report further shows that Congress carefully calibrated the amendment to 15 U.S.C. § 1641(d) to "ensure that the High Cost Mortgage market polices itself" without "significantly restrict[ing] the flow" of credit for HOEPA-qualifying loans.  S. Rep. No. 103-169, at 28.  Both interests are served and balanced by reading the text of § 1641(d)(1), in context, to eliminate the special protections that a holder in due course has, but these interests would be disrupted and unbalanced by Plaintiffs' expansive construction of the statute.

The practical effect of § 1641(d)(1) on assignees purchasing loans in Maryland is that an assignee trying to enforce a HOEPA loan is now subject, in any action to enforce that note, to the defenses in § 3-305(a)(2), and the defensive claims in recoupment described in § 3-305(a)(3), regardless of its status as a holder-in-due-course.  Without § 1641(d)(1), the holder in due course would take

free from those defenses and recoupment claims in an enforcement action.  Thus, under HOEPA and the Maryland UCC, an assignee/holder of a HOEPA loan may be unable to enforce a note it purchased.  Furthermore, where the underlying state law (a) provides a right of action against an assignee for a lender's conduct but (b) provides a holder in due course with a defense to that cause of action, § 1641(d)(1) may remove that defense for holders of HOEPA loans.  By eliminating special holder-in-due-course protections in this way for HOEPA loans, § 1641(d)(1) creates the economic incentive for self-regulation of HOEPA mortgage lending intended by Congress, without threatening to significantly restrict the flow of credit for HOEPA loans.

In contrast, Plaintiffs gloss over the significance of the legislative history expressly stating that § 1641(d)(1) "eliminates *'holder in due course' protections* for assignees of High Cost Mortgages" and showing that HOEPA strikes a careful balance to (1) "ensure that the High Cost Mortgage market polices itself" without (2) "significantly restrict[ing] the flow" of credit.  *Id.*  Plaintiffs' construction of § 1641(d)(1) plainly would do *much more than* "eliminate[] holder in due course protections for assignees of High Cost Mortgages."  It would provide an affirmative right of action against an assignee for a lender's statutory violations where no such right of action has been authorized against an assignee by state law.

- 40 -

Such a construction disrupts the balance that the Senate report shows Congress sought to strike, *i.e.*, a balance intended to "ensure that the High Cost Mortgage market polices itself" without "significantly restrict[ing] the flow" of credit for HOEPA-qualifying loans. Plaintiffs' construction likewise would transform both current and *former* holders and assignees of paid-off HOEPA loans into nearly absolute insurers of lenders' alleged past conduct—including the alleged knowing violations that Plaintiffs assert in these cases, or even fraud. Nothing in HOEPA's legislative history suggests that Congress intended this extraordinary result.

Drawing from the same Senate report cited previously, Plaintiffs argue that HOEPA is "mirrored" by the "Holder Rule" promulgated by the FTC and that it therefore *must* be construed to authorize an affirmative right of action by a consumer against a mortgage assignee for a lender's alleged violation of the SMLL. *See* AOB 33-36. This argument stretches the legislative history past the breaking point.

Although the Senate report states that § 1641(d) "mirrors a rule promulgated by the Federal Trade Commission for 'consumer installment' loans," S. Rep. No. 103-169, at 28 (1993), *reprinted in* 1994 U.S.C.C.A.N. 1881, 1912, the report does not elaborate on this comment or explain—anywhere—a purported relationship between § 1641(d)(1) and the FTC's Holder Rule. Similarly, the report does not

say, or even suggest, that § 1641(d)(1) must be construed to match the FTC Holder Rule in every respect.  Indeed, there are significant differences between the consumer credit contracts regulated by the FTC Holder Rule and the mortgage loan transactions regulated by TILA as amended by HOEPA that make it impossible for § 1641(d)(1) to be construed to match the FTC Holder Rule in every respect.[14]

Nor is there any indication in the Senate report that Congress understood the plain language of the FTC Holder Rule to provide an affirmative right of action against assignees for each and every statutory violation allegedly perpetrated by a seller, even where such an action against an assignee has not been authorized by state law.  The text of the Holder Rule, which is not quoted in Plaintiffs' Opening Brief, does not authorize such an action.  *See* 16 C.F.R. § 433.2.  The text of the rule simply requires that certain consumer credit contracts include a notice stating that a holder of the contract is subject to the claims and defenses that could be asserted against the seller.  *Id.*  Plaintiffs therefore leap to an unsustainable conclusion when they insist that § 1641(d)(1) must be construed, in light of the

---

[14]    For example, the FTC Holder Rule regulates *sellers* of consumer goods and services by eliminating the separation in a consumer sales transaction between a seller's duty to deliver and the consumer's duty to pay a finance company, regardless of whether there has been any assignment of the financing instrument. *See* 40 Fed. Reg. 55,306, 55,307-08. The rule is interpreted by both the FTC and the courts in a manner consistent with this purpose.  However, mortgage lending does not involve a similar separation of a seller's duty to deliver and the consumer's duty to pay a finance company, regardless of whether there has been any assignment of the financing instrument.

FTC Holder Rule, to authorize an affirmative right of action by a consumer against a mortgage assignee for a lender's alleged violation of the SMLL.

Moreover, insofar as the FTC Holder Rule may be perceived as relevant to the effect of § 1641(d)(1), one circuit court of appeals has held that a buyer may not invoke the FTC Holder Rule to assert a state law cause of action against an assignee of a retail installment contract based on a seller's alleged misconduct, where the underlying state law does not authorize a right of action against such an assignee. *See LaBarre v. Credit Acceptance Corp.*, 175 F.3d 640, 644 (8th Cir. 1999) (dismissal affirmed, notwithstanding the FTC Holder Rule, because a buyer of used car "could not affirmatively bring … state law causes of action against" the assignee of her retail installment contract for the alleged misconduct of her dealer; "[i]nstead, [she] could only raise these claims as a defense in an action brought against her by [the assignee]"). *LaBarre*'s construction and application of the FTC Holder Rule only serves to reinforce the Assignee Defendants' position here.

In some cases, federal district courts have allowed a debtor to bring an affirmative action against an assignee of a consumer credit contract under the FTC Holder Rule, without analysis of whether the underlying state law authorizes a right of action against such an assignee. The courts that have allowed such an action, however, have done so *only* because the FTC expressly stated in its adopting release for the rule that such an affirmative action could be pursued based

on the federal notice included in the contract under the limited circumstances "'where a seller's breach [of its duty to deliver under the contract] is so substantial a court is persuaded rescission and restitution are justified.'" *Comer v. Person Auto Sales, Inc.*, 368 F. Supp. 2d 478, 490 (M.D.N.C. 2005) (quoting 40 Fed. Reg. 53,524 (Nov. 18, 1975)).  This particular observation also supports the Assignee Defendants' construction of § 1641(d) in this case.  The FTC's express statement in its adopting release respecting affirmative actions distinguishes the rule from § 1641(d)(1), which was enacted without any similar express and unequivocal Congressional statement in favor of affirmative actions against assignees under any circumstances either in the text of the statute or its legislative history.

In any event, those courts that have entertained affirmative actions against assignees under the FTC Holder Rule have "clearly limited the extent to which a consumer may use the FTC Holder Rule affirmatively against a creditor."  *Comer*, 368 F. Supp. 2d at 490 (collecting district court cases under the FTC Holder Rule). For example, in *Irby-Greene v. M.O.R., Inc.*, 79 F. Supp. 2d 630, 635-36 (E.D. Va. 2000), the court found that an affirmative action under the FTC Holder Rule is permissible only in the "the rare situation when the seller's breach renders the transaction practically worthless to the consumer" and when the plaintiff has not received any benefit from the transaction and is no longer able to enjoy the product or service that was financed.  *See also Crews v. Altavista Motors, Inc.*, 65 F. Supp.

2d 388, 391 (W.D. Va. 1999) (similar); *Eachen v. Scott Hous. Sys., Inc.*, 630 F. Supp. 162, 165 (M.D. Ala. 1986) (likewise limiting affirmative actions against a creditor under the FTC Holder Rule to situations of non-delivery of goods or other similarly rare situations "where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified"), cited in AOB 34-35.

Here, by contrast, the operative amended complaints demonstrate that Plaintiffs received benefits from their second mortgage loans, retained those benefits, and voluntarily paid off their loans in full, all while continuing to enjoy the benefits of their mortgage loan transactions.

In short, the FTC's statements about its Holder Rule and cases applying the rule do not support Plaintiffs' contention that § 1641(b)(1) provides a right of action against assignees for lenders' alleged SMLL violations. And, on balance, HOEPA's legislative history provides further support for the construction of § 1641(d)(1) adopted below.

> **4. The Clear Majority And Better-Reasoned Case Law Holds That § 1641(d)(1) Does Not Provide An Affirmative Right Of Action Against Loan Assignees For A Lender's Alleged Misconduct.**

In at least eight cases, courts have analyzed § 1641(d)(1) and concluded that it simply eliminates potential holder-in-due-course protections and does *not*

authorize a right of action against assignee defendants for lenders' violations of other state and federal statutes.[15]

For example, in *Bank of New York v. Heath*, an Illinois circuit court dismissed counterclaims against a mortgage assignee predicated on § 1641(d)(1) and a lender's alleged violations of the federal Real Estate Settlement Procedures Act and the Illinois Consumer Fraud Act. *Bank of New York*, 2001 WL 1771825, at *1-2. In reaching this result, the Court noted that:

> The language of subsection (1) provides in clear and unambiguous terms that assignees are subject to all claims and defenses under any law that a borrower could have asserted against the original lender. …. However, this provision merely eliminates the holder-in-due-

---

[15]     *See Bank of New York v. Heath*, No. 98-CH-8721, 2001 WL 1771825 (Ill. Cir. Ct. Oct. 26, 2001) (dismissing a state-law claim against a mortgage assignee predicated on 15 U.S.C. § 1641(d)), *aff'd on other grounds*, *U.S. Bank Nat'l Ass'n v. Clark*, 837 N.E.2d 74 (Ill. 2005); *Dowdy v. First Metro. Mortg. Co.*, No. 01C7211, 2002 WL 745851 (N.D. Ill. Jan. 29, 2002) (dismissing a state-law claim against a mortgage assignee predicated on 15 U.S.C. § 1641(d)); *Harvey v. EMC Mortgage Corp.*, No. 02-32412DWS, 2003 WL 21460063, at *6 (Bankr. E.D. Pa. June 9, 2003) (dismissing a federal Real Estate Settlement Procedures Act claim against a mortgage assignee predicated on 15 U.S.C. § 1641(d)); *see also Vandenbroeck v. ContiMortgage Corp.*, 53 F. Supp. 2d 965, 968 (W.D. Mich. 1999) (ordering a remand to state court of an action predicated against a mortgage assignee predicated on 15 U.S.C. § 1641(d), prior to filing or adjudication of any motion testing the legal sufficiency of plaintiff's claim); *Baker v. Century Financial*, No. 01-0903-CV-W-SOW-ECF, 2001 U.S. Dist. Lexis 24320, at *7 (W.D. Mo. Nov. 19, 2001) (same); *Mull v. Alliance Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 910 (W.D. Tenn. 2002) (granting motion to dismiss state-law actions where standing to sue allegedly was predicated on 15 U.S.C. § 1641(d)); *Dash v. FirstPlus Home Loan Owner Trust 1996-2*, 248 F. Supp. 2d 489, 506 (M.D.N.C. 2003) (same); *Faircloth v. Nat'l Home Loan Corp.*, 313 F. Supp. 2d 544, 551 n.11 (M.D.N.C. 2003) (same), *aff'd*, 87 F. App'x 314 (4th Cir. 2004).

course defense, and is not intended to bestow any rights upon the borrower. … *By its terms, section 1641(d)(1) only applies if a plaintiff can assert a claim under some other law, and even then, only affects a state law defense (holder-in-due-course) which a defendant assignee might raise.*

*Id.* (internal quotations and citations omitted) (emphasis added).

Similarly, in *Dowdy v. First Metropolitan Mortgage Co.*, a federal district court dismissed another claim against a mortgage assignee predicated on § 1641(d)(1) and a lender's alleged violations of the Illinois Consumer Fraud Act (ICFA).  *Dowdy*, 2002 WL 745851, at *3.  The court noted that the assignee defendants' motions to dismiss were "not invoking a holder-in-due-course defense to the ICFA claims," but were arguing the plaintiffs lacked a right of action against them under state or federal law.  *Id.*  "In fact, regardless of whether the holder-in-due-course defense is raised, Illinois law is absolutely clear on the point that [the assignee defendants are] not the actual perpetrators of the fraud, cannot be held liable under ICFA for the [lender's] alleged fraud."  *Id.* (noting that the ICFA "does not provide a cause of action against those who knowingly receive benefits from the person committing the violation") (internal quotations omitted).  *See also Dash*, 248 F. Supp. 2d at 506 ("By its terms, section 1641(d) … only affects … the 'holder in due course' defense, which a defendant assignee might raise against the holder of their loan;" § 1641(d)(1) "is not intended to bestow any rights upon the borrower nor constitute an independent basis of liability")); *Faircloth*, 313

- 47 -

F. Supp. 2d at 551 n.11 ("Plaintiff's characterization of the reach of HOEPA's assignee liability is flawed because HOEPA does not create a new right or claim that would not otherwise be cognizable under the law.").

Plaintiffs point to *Bryant v. Mortgage Capital Resource Corp.*, 197 F. Supp. 2d 1357 (N.D. Ga. 2002), *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477 (Mo. Ct. App. 2010), and *In re Thomas*, No. 07-16445, 2008 WL 5412113 (Bankr. E.D. Pa. Oct. 17, 2008), to support their expansive construction. But their reliance on these cases is as flawed as Plaintiffs' strained efforts at statutory construction.

For example, *Bryant* does not account for the actual words of the statute, the specific context surrounding the statutory language, the broader context of the statute as whole, or the precise balance that Congress struck by eliminating holder-in-due-course protections. In *Mitchell*, which involved an appeal of a class certification order, the parties and the state court of appeals expressly *assumed* that HOEPA authorizes an action against mortgage assignees for a lender's statutory misconduct in making loans; however, the issue was not actually litigated or decided in the court of appeals. *Mitchell*, 334 S.W.3d at 504 & n.21 (noting this assumption and following *Bryant* without any additional analysis of the issue).

Lastly, *In re Thomas* actually supports Defendants' construction of the statute. In *Thomas*, an assignee and holder of a note and mortgage filed a proof of claim in a bankruptcy case, seeking to enforce the note and mortgage. The

obligor-debtor responded by commencing an adversary proceeding against the assignee for her lender's alleged violations of the disclosure requirements of § 1640(a)(4), common law fraud, breach of fiduciary duties, and unfair trade practices. The bankruptcy court allowed the obligor-debtor to go forward with her state-law claims against the assignee under § 1641(d)(1) but, in reaching this result, expressly noted that the obligor-debtor's claims sought damages "by way of recoupment only"—not by way of an affirmative damages claim against the assignee. In that respect, the reasoning in *Thomas* aligns squarely with the construction of § 1641(d)(1) that eliminates special "holder-in-due-course" protections and exposes assignees who are holders-in-due-course to defensive claims in recoupment to reduce or avoid an obligation to pay on a note or mortgage instrument. That is as far as a fair reading of § 1641(d)(1) can go.

## C. Even Assuming Maryland UCC § 3-306 Or 15 U.S.C. § 1641(d)(1) Authorized A Right Of Action Against A Loan Assignee, Plaintiffs' Actions Here Are Barred By The Applicable Statute Of Limitations.

Even if Plaintiffs were correct in asserting that § 3-306 provides a borrower/obligor with an affirmative right of action against an assignee, such a claim under § 3-306 would be barred in this case by the three-year statute of limitations for actions under Article 3. Md. Code Ann., Com. Law § 3-118(g)(iii). In all of the cases before the Court, Plaintiffs brought suit against the Assignee Defendants more than three years after the closing of the loans at which the alleged

overcharges were imposed. *See, e.g.*, JA 942-43 (*Fulmore* Third Am. Compl. ¶ 24).

Similarly, if the Court were to find that § 1641(d)(1) authorizes a right of action against the Assignee Defendants for lenders' alleged SMLL violations, then it is clear that such a right of action has its source in federal law, specifically TILA as amended by HOEPA. *Cf., Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) (Holmes, J.) (a case arises under federal law if federal law creates the cause of action); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1986) (same). For that reason, Plaintiffs' alleged right of action would be subject to a one-year statute of limitations and therefore time-barred.

Specifically, § 1640(e) provides that affirmative actions for damages under TILA and HOEPA must be "brought … within one year from the date of the occurrence of the violation." This statute begins to run when "the lender and borrower contract for the extension of credit." *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973); *see also Blue v. Fremont Inv. & Loan*, 562 F. Supp. 2d 33, 43 (D.D.C. 2008) (holding that the one-year TILA statute of limitations begins to run on the date of the underlying loan transaction closed); *Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006) (same). Under that rule of accrual, there is no dispute that Plaintiffs' HOEPA-based claims in this case are time-barred as well. *See, e.g.*, JA 942-43 (*Fulmore* Third Am. Compl. ¶ 24).

Although Plaintiffs argue against the application of § 1640(e)'s one-year limitations period (AOB 39-43), none of their arguments withstand scrutiny. First, in at least two cases, courts have recognized that § 1640(e)'s one-year statute of

limitations applies to any possible affirmative claim for damages against an assignee predicated on § 1641(d). Most notably, in *Bryant* (Plaintiffs' primary case authority), the federal district court accepted a construction of § 1641(d) identical to the one advanced by Plaintiffs here, but also recognized that § 1640(e)'s one-year statute of limitations must apply to such a claim and then dismissed one of the named plaintiffs' claims in relevant part based on the statute of limitations defense.[16] *See Bryant*, 197 F. Supp. at 1366-68. Likewise, in *In re Randall*, 358 B.R. 145, 171 (Bankr. E.D. Pa. 2006), a federal bankruptcy court dismissed two affirmative claims for damages against an assignee allegedly liable under § 1641(d) where § 1640(e)'s one-year limitations period clearly "expired" prior to the debtor's commencement of her adversary proceeding.

Second, although Plaintiffs assert otherwise, *nothing* in either the text or legislative history of § 1641(d) would allow a court to avoid the application of § 1640(e)'s one-year statute of limitations in this case. Plaintiffs simply cannot

---

[16]    Plaintiffs erroneously assert that *Bryant* did not order the dismissal of state law claims predicated on § 1641(d) based on § 1640(e)'s one-year statute of limitations. The court's ruling granting the assignee defendant's motion to dismiss in relevant part based on § 1640(e) was express and unequivocal: "those claims [predicated on §§ 1641(b) and 1641(d)] presently before this court which accrued prior to March 15, 1999, are hereby barred by section 1641(e) [sic] of TILA." *Bryant*, 197 F. Supp. 2d at 1368 & n.32 ("RFC's motion to dismiss with respect to that claim, brought by Diane Davis, is hereby GRANTED."). Plaintiffs also are wrong when they contend that this statute of limitations issue was addressed and decided in *Schwartz v. Bann-Corr Mortg.*, 197 S.W.3d 168, 178-79 (Mo. Ct. App. 2006). The only limitations issue addressed or decided in *Schwartz* involved a choice between two state-law statutes of limitations. The case did not address the application of § 1640(e) in any respect.

have it both ways: if Plaintiffs' right of action against Defendants arises by operation of TILA as amended by HOEPA, then the action plainly is subject to § 1640(e)'s one-year statute of limitations.

Third, it is well settled that § 1640(e)'s one-year limitations period generally applies to actions alleging HOEPA violations. *See Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 532 (7th Cir. 2011); *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 303-04 (3d Cir. 2010); *Hood v. Aurora Loan Servs.*, No. CCB-10-11, 2010 WL 2696755, at *2 (D. Md. July 6, 2010); *Davis v. Wilmington Fin., Inc.*, No. PJM 09-1505, 2010 WL 1375363, at *5 (D. Md. Mar. 26, 2010).

And, where a federal statute for which Congress has provided a statute of limitations underlies a plaintiff's claim, the federal statue of limitations should govern. *See, e.g.*, *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter."); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001) ("[W]hen Congress creates a cause of action and provides both legal and equitable remedies, its statute of limitations for that cause of action should govern, regardless of the remedy sought."); *see also Burgh v. Borough Council of Montrose*, 251 F.3d 465, 472 (3d Cir. 2001) ("Where … Congress explicitly provides a limitations period in the text of the statute, that period is definitive").

Thus, even if Plaintiffs could make an affirmative claim under HOEPA (which they cannot), that claim would be time-barred.

## II.  The District Court Correctly Concluded That Plaintiffs May Not Sue Loan Servicers Holding Maryland Lender Licenses Under The SMLL Based Solely On Servicers' Collection Of Payments On Loans They Did Not Originate.

In two of the consolidated cases, *Rodwell* and *Mitchell*, Plaintiffs raise a discrete issue: whether a mortgage servicer, who played no role in the origination of the loan and is not alleged to have independently violated the SMLL, may nevertheless be liable under the SMLL merely for having collected monthly payments of principal and interest.  In those cases, Plaintiffs sought leave to file amended complaints to provide more detailed allegations on why the Servicer Defendants were licensees under Maryland law and therefore qualified as "lenders" subject to the SMLL and, in turn, liable for the originating lenders' conduct.  Applying the plain terms of the statute, the district court denied leave to amend, concluding that servicers may not be liable under these circumstances. While Plaintiffs claim this is error, the district court correctly interpreted the relevant provisions of the SMLL and did not abuse its discretion in denying leave.

Although the SMLL contains fifteen substantive provisions that govern what lenders can and cannot do when originating secondary mortgage loans, *see* Md. Code Ann., Com. Law §§ 12-402 to 12-412, Plaintiffs' proposed amended complaints did not allege that the Servicer Defendants violated even one of them. Instead, they merely alleged that those Defendants obtained licenses and thereafter collected monthly payments.  Following these bare allegations, Plaintiffs went on

to allege that the Servicer Defendants met the statutory definition of "lender," such that they could be held liable under the SMLL for violations committed by the originating lenders.

The district court rejected the proposed amendments on grounds of futility. The court began its analysis with § 12-413 of the SMLL, which states:

> Except for a bona fide error of computation, *if a lender violates* any provision of this subtitle *he may collect* only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law

Md. Code Ann., Com. Law § 12-413 (emphasis added). Plaintiffs argued that a licensed servicer could be liable under this provision because a violation of the SMLL by the originating lender bars a servicer from collecting interest payments. The district court found, however, that "[t]his interpretation contradicts the plain meaning of the statute's language[.]" JA 921. Relying on the unambiguous language stating that the statute applies to lenders who have "violate[d] any provision of this subtitle," the district court concluded that "[a] lender who has not yet violated the SMLL is not restricted to the collection of the principal, so it would not commit a new violation by collecting interest." *Id*.

Plaintiffs now argue that the district court disregarded the canon of statutory construction that requires a court to look first to the plain language of the statute to

determine the legislature's intent.  But, as the district court recognized, the plain language of § 12-413 clearly establishes that this section is a remedies provision that applies only to lenders who violate substantive provisions of the SMLL. Accordingly, because the expression of one thing in a statute is the exclusion of another, *Drew v. First Guaranty Mortgage Corp.*, 842 A.2d 1, 7 (Md. 2003); *Price v. Maryland*, 835 A.2d 1221, 1227 (Md. 2003), the collection of interest by a lender who is *not* alleged to have violated the SMLL does not constitute a violation.

Other Maryland cases also have recognized that the SMLL's remedial provisions apply only to a lender who has violated the statute.  One court characterized § 12-413 as a "penalty against the violator" of the SMLL, not as an independent basis for a claim under the statute.  *See Thoreson v. Shaffer*, 683 A.2d 1153, 1157 (Md. App. 1996); *see also Schmidt v. Beneficial Fin. Co. of Frederick*, 400 A.2d 1124, 1127 n.8 (Md. 1979) (describing section 12-413 as the "civil penalties authorized to be imposed upon a lender for violating any provision of the [SMLL]").

Moreover, the *Thoreson* court noted that the "may not collect" language in § 12-413 did not appear in the original SMLL statute or codification, but rather was added as part of a revisor's stylistic changes when former section 69 of Article 66 became § 12-413 of the Commercial Law Article.  *Thoreson*, 683 A.2d at 1156-

57. *See also* 1967 Md. Laws, Chapter 390, Sec. 1 at § 69; 1975 Md. Laws, Chapter 49, Sec. 2, § 12-413 and Revisor's Note thereto. The original SMLL language provided simply that in the event of a violation "'the lender shall be entitled to be repaid only the actual amount of the mortgage loan, exclusive of any interest, costs, or other charges of whatever nature[.]'" *Thoreson*, 683 A.2d at 1157 (quoting 1967 Md. Laws, Chapter 390, Sec. 1 at § 69). Thus, the statutory "may not collect" language upon which Plaintiffs rely was not even part of the SMLL as enacted. This also makes it clear that the legislature intended that SMLL claimants would only be able to recover a remedy from a lender that violated a substantive provision of the statute. *Cf. Pack Shack, Inc. v. Howard Cnty.*, 808 A.2d 795, 803 (Md. 2002) ("'a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law'") (citation omitted).

In an effort to support their servicer liability theory, Plaintiffs point to SMLL § 12-411, which states:

> A lender may not directly or indirectly, contract for, charge, or receive, any interest, discount, fee, fine, commission, brokerage, charge, or other consideration in excess of that permitted by this subtitle.

Md. Code Ann., Com. Law § 12-411. Relying on this language, Plaintiffs argue that an alleged SMLL violation by a loan originator means that "only the principal

amount of the loan could be collected under § 12-413." *See* AOB 55. Plaintiffs then assert that servicers may be liable solely on this basis:

> Therefore, when the servicer continued to collect interest on the second mortgage loan, it collected consideration and interest in excess of that permitted by the SMLL, thereby making it subject to the remedies provided by § 12-413.

*See id.*

Plaintiffs' two-step analysis fails for at least three dispositive reasons. First and foremost, their analysis requires a party who is not alleged to have violated the statute to provide a remedy to a plaintiff. Nothing in the language of the statute supports that result. On the contrary, as the district court aptly noted, "the SMLL only prohibits a lender *who has already violated the SMLL* from receiving charges beyond the principal of the loan." JA 921 (emphasis in original).

Second, as with its interpretation of § 12-413, the district court's plain language interpretation of § 12-411 finds direct support in the statutory history. The original statutory language, now codified as § 12-411, stated:

> (a) The following is hereby fixed as the schedule of maximum amounts which may be charged to an applicant for a secondary mortgage loan for costs, fees, services, point and premiums which may be incurred by such applicant and no other charges of whatever nature shall be made in connection with a secondary mortgage loan[.]

1967 Md. Laws, Chapter 390, Sec. 1 at § 62(a). This language unambiguously focuses on the originating lender as the party whose conduct the Maryland legislature intended to regulate through the SMLL. When the SMLL was re-

codified into its current form, the Revisor included the following note to explain the verbiage used in § 12-411:

> REVISOR'S NOTE:  This section is new language derived *without substantive change* from Art. 66, § 62(a).  It is patterned after similar language contained in §§ 12-210 and 12-313 of this title, and is introduced to make it explicit that a lender may charge the borrower only the charges permitted by this subtitle.

1975 Md. Laws, Chapter 49, Sec. 2, § 12-411 and Revisor's Note thereto (emphasis added).

The Revisor's explanation thus makes clear that the current statutory language did not signal a modification of the Maryland legislature's focus on originating lenders.  The Maryland Court of Special Appeals has drawn this important distinction, expressly recognizing that the legislature's specific purpose was to prevent an originating lender that has violated the SMLL from profiting as a result of such violation.  *Thoreson*, 683 A.2d at 1157 ("[T]he legislative intent was to prohibit the lender from profiting from his violation of the law, not to make the borrower whole.  Had the legislature intended to indemnify the borrower from any loss, it would have used different language.").  As the district court recognized when pointing to these authorities, if the purpose of the SMLL is to prevent a lender from profiting from its violation, it would make no sense to hold liable a party that has not violated the statute.

Third, Plaintiffs' analysis ignores that their SMLL claims do not allege that the originating lender imposed an interest rate beyond what is legally permissible under the statute. Instead, they allege that the originators collected points and/or fees that the SMLL did not allow. However, the section of the SMLL that proscribes certain fees does not identify the subsequent collection of monthly payments as a separate violation of the statute. *See* Md. Code Ann., Com. Law § 12-405. Accordingly, the collection of monthly payments by a downstream servicer cannot be characterized as an SMLL violation.

The facts at issue in *Rodwell* underscore the infirmities in Plaintiffs' analysis. In *Rodwell*, the Plaintiff alleges that a lender called Eagle Capital Mortgage Ltd. ("Eagle Capital") made him a second mortgage loan on December 15, 1997, charging various improper fees in the process. The Plaintiff further alleges that Eagle Capital assigned the loan post-closing to one entity in 1998, which assigned the loan to another entity in 2006. Litton Loan Servicing LP ("Litton") is not alleged to have ever owned the loan; Litton is merely alleged to have serviced the loan by collecting payments on behalf of the owners of the loan. As the mortgage servicer, Litton did not keep the payments, but instead remitted them as instructed to the beneficial owners. Despite the lack of any connection to the SMLL violation, Plaintiffs allege that Litton became subject to the penalty provisions of the SMLL when it obtained a Maryland mortgage license on

February 8, 2006, and that Litton then became liable for Eagle Capital's purported SMLL violations more than eight years earlier.

These facts demonstrate the implausibility of Plaintiffs' argument. They posit that a servicer that has not violated the SMLL, but has instead merely collected lawful interest for the benefit of others, may be responsible for restoring to a borrower all of the interest the borrower has paid, even though the servicer has no relationship with the originating lender that allegedly violated the statute. Nothing in the text of the SMLL suggests that it stretches this far. Rather, the purpose of the SMLL is "to prohibit the lender from profiting from his violation of the law, not to make the borrower whole." *Thoreson*, 683 A.2d at 1157. Judge Motz, accordingly, did not abuse his discretion when he denied leave to amend *Rodwell* and *Mitchell*.

## III. The District Court Correctly Concluded That No Cause Of Action Exists Under Maryland Law For The Alleged Failure Of An Assignee To Provide Documents Relating To A Mortgage Loan That Had Been Paid Off For More Than Three Years.

Plaintiffs in *Gephardt* and *Johnson* argue that Judge Motz erred in dismissing their claims based on allegations that certain Assignee Defendants failed to provide them with documents relating to loans that were paid off more than three years before the requests for those documents were made. AOB 56-62. Plaintiffs claim that these allegations give rise to state-law causes of action for: (1) breach of the implied covenant of good faith and fair dealing; (2) violation of

the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, et seq. (the "CPA"); and (3) violation of the Assignee Defendants' purported obligation to provide the borrower with an accounting. Plaintiffs are wrong on each count.

To begin with, the district court correctly concluded that there is no contractual obligation under Maryland law—implied or otherwise—to provide Plaintiffs with loan documents following the payoff of their loans. At that point, the contractual relationship between the borrower and assignee is at an end. Here, the Plaintiffs in *Gephardt* and *Johnson* made their request for documents *after* they allege that certificates of satisfaction of the loans were filed. Accordingly, any purported contractual obligation to provide the requested documents ended *before* the purported requests for loan documents were made, and there can be no breach of contract in these circumstances. *See Taylor v. NationsBank*, *N.A.*, 776 A.2d 645, 651 (Md. 2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.").

Moreover, even assuming the existence of some contractual relationship at the time of the purported requests, there was no contractual provision that specifically obligated the Assignee Defendants to produce copies of their loan files. *See* AOB 59 ("No contractual provision existed that addressed the obligation

to provide missing documents one way or the other"). Without such a specific obligation, there is no implied duty of good faith to provide the documents either. Under Maryland law, the implied covenant of good faith and fair dealing extends only to the performance and enforcement of the contract itself; it "is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise." *Blondell v. Littlepage*, 991 A.2d 80, 90 (Md. 2010) (citing *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175 (4th Cir. 2000)); *see also Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. App. 1992) ("[T]he duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; *it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents*.") (emphasis added).

Plaintiffs try to distinguish *Parker*, arguing that they "are not alleging that their mortgage [itself] created an obligation owed by Appellees to a third party." *See* AOB 58. But *Parker* is on all fours. In *Parker*, as here, the plaintiffs attempted to use the implied covenant of good faith and fair dealing to impose a non-contractual duty on their lender—there, it was a duty to protect the borrowers' interests by monitoring their builder; here, it is a continuing duty that extends beyond loan payoff to provide borrowers with loan documents that indisputably were provided to them at the time of their loan closing. Neither duty can be

squared with the *Parker* court's holding that the implied covenant cannot be used to impose affirmative obligations on a lender or its assignee that are not expressly required by the loan documents. *Parker*, 604 A.2d at 531; *see also Blondell*, 991 A.2d at 90-91.[17]

With respect to their CPA claim, Plaintiffs argue that the Assignee Defendants' failure to provide them with loan documents constitutes a misstatement or concealment of material facts in violation of CPA §§ 13-301(3) and 13-301(9). *See* AOB 60. But the *Gephardt* and *Johnson* complaints lack any allegations supporting a conclusion that the Assignee Defendants violated either section. In that regard, a cause of action under Maryland's CPA must satisfy the heightened pleading requirements under Federal Rule of Civil Procedure 9(b). *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009); *Adams v. NVR Homes*, 193 F.R.D. 243, 253 (D. Md. 2000). Here, Plaintiffs did not allege—with the requisite particularity—specific facts supporting the following elements of their

---

[17]    It also bears noting that under federal law, any obligation an assignee may have to provide a borrower with loan documents is extinguished one year after the loan has been paid off. The federal Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq., and its related regulations, specifically provide that a request by a borrower for documents relating to his loan constitutes a "qualified written request" only if it is made within one year of the date that the loan was paid in full. *See* 24 C.F.R. § 3500.21(e)(2)(ii). RESPA thus requires the maintenance of the documents relating to a borrower's loan for only one year after payoff. Plaintiffs allege, however, that they requested loan documents at least *three years* after they paid off their respective loans.

CPA claims: (1) that Defendants intended for them to rely on any statement or omission; (2) that Plaintiffs did, in fact, rely on any alleged statement or omission; (3) that any alleged statement or omission was made in connection with the promotion or sale of goods or services; (4) that any alleged statement or omission was made in connection with a "contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention;" or (5) that any alleged statement or omission was made in connection with the "performance of a merchant with respect to an agreement of sale, lease, or rental."  CPA § 13-301. Plaintiffs' CPA claim fails for this reason as well.

Plaintiffs also failed to properly allege that they suffered a CPA injury as a result of the Assignee Defendants' alleged omissions.  *See DeReggi Constr. v. Mate*, 747 A.2d 743, 752 (Md. App. 2000) (holding that "to receive protection under the Consumer Protection Act, [the plaintiffs] must show they were actually injured by [the defendants' alleged] violation of the Act"); *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 509-10 (Md. App. 1999) (holding that "[i]n an action brought by a private party, the claimant may only recover damages for actual injury or loss").  Rather, Plaintiffs argue that "they have been prevented from discovering the facts and circumstances of their second mortgage loan transaction thereby depriving them of the statutory remedies provided by the SMLL."  AOB 60.  This purely theoretical injury—that Plaintiffs have been "deprived" of

statutory remedies that *may* be available *if* their loan violated the SMLL—is insufficient to support a CPA claim. *See DeReggi Constr.*, 747 A.2d at 752; *McGraw*, 723 A.2d at 509-10; *see also CitaraManis v. Hallowell*, 613 A.2d 964, 969 (Md. 1992) (purpose of CPA is to "compensate the injured party for the injury sustained due to the defendant's acts").

Finally, Plaintiffs also failed to properly allege their accounting claim. To support that claim, a complaint must provide: (1) the defendant was under a legal duty to account for money or property of another; (2) the defendant was compelled to render such an account; and (3) the defendant failed to render such account. *See P.V. Props., Inc. v. Rock Creek Village Assocs., Ltd. P'ship*, 549 A.2d 403, 409 (Md. App. 1988). Plaintiffs argue that the *Gephardt* and *Johnson* complaints meet these requirements by alleging that "the information necessary to determine whether, by operation of the SMLL, an overpayment had occurred was known and kept by Appellees," which in turn establishes a fiduciary duty on Defendants' part to provide Plaintiffs with an accounting. AOB 61 (citing *P.V. Props.*, 549 A.2d at 409).

However, a lender (or its assignee) does not generally owe a borrower any fiduciary duty. *See Silver Hill Station Ltd. Partnership v. HSA/Wexford Bancgroup, LLC*, 158 F. Supp. 2d 631, 642 (D. Md. 2001) (citing *Parker*, 604 A.2d at 532). Maryland law imposes such a duty only if special circumstances

- 65 -

over and above any contractual obligations exist, including (1) the assumption by the lender of extra services over and above contractual obligations, and (2) the receipt by the lender of economic benefits other than those accruing under an ordinary mortgage. *Id.* The *Gephardt* and *Johnson* complaints lack these allegations as well.

Accordingly, there is no support for Plaintiffs' state-law claims based on the alleged failure to provide them with their loan documents, and these claims were properly dismissed.

## IV. The District Court Correctly Rejected Plaintiffs' Motions To Remand The *Nance* And *Tipton* Cases.

Plaintiffs challenge the district court's denial of their motions to remand in two cases, *Nance* and *Tipton*. This challenge also fails as a matter of law. The district court had federal question jurisdiction over Plaintiffs' complaints resting on alleged violations of § 1641(d)(1). JA 788-91, 1290. The district court also properly exercised its federal bankruptcy jurisdiction over *Tipton*, JA 1290, and that same basis for federal jurisdiction exists in *Nance* (although the district court did not reach it there). JA 788.

### A. There Is Federal Question Jurisdiction In Both Cases Based On Plaintiffs' HOEPA Claims.

Under the "well-pleaded complaint" rule, the complaints either "create[] [a federal] cause of action" that does not otherwise exist under state law or

"necessarily depend[] on resolution of a substantial question of federal law." *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 219 (4th Cir. 2001) (en banc) (quoting *Franchise Tax Bd. of State of Cal. v. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)); *accord Pinney v. Nokia, Inc.*, 402 F.3d 430, 442-43 (4th Cir. 2005).

The Plaintiffs in *Nance* and *Tipton* purport to bring their claims under the SMLL, but they concede there is no liability for assignees under the SMLL. AOB 25 ("the SMLL, by itself, does not provide for such derivative liability"). Rather, their claims expressly depend on allegations—in sections prominently labeled "Assignee Liability Based Upon HOEPA," JA 775-78, 1311-14—that the alleged Assignee Defendants are liable based on HOEPA's provisions alone. As the district court thus found, Plaintiffs necessarily allege that federal law itself "creates" the cause of action against the Assignee Defendants. JA 789 ("[I]f any such [assignee] liability exists, it exists only under HOEPA.").

Alternatively, regardless of whether Plaintiffs purport to assert a state claim or a federal claim, the district court also properly held that "the interpretation of the relevant HOEPA provision lies at the heart of Plaintiffs' claim. This is wholly sufficient to establish federal question jurisdiction and make removal of this action proper." JA 789-90 (citing *Franchise Tax Bd.*, *supra*, and *Grable & Sons Med. Prods., Inc. v. Darue Eng'g & Mfg. Co.*, 545 U.S. 308, 312-14 (2005)). The

district court elaborated in its decision dismissing the consolidated cases on the merits:

> Conceptually, Plaintiffs' view of [HOEPA] § 1641(d)(1) is enigmatic. It seems clear to me that if a plaintiff has a cause of action against Defendant *A* but not against Defendant *B* under state law and then purportedly obtains a cause of action against Defendant *B* solely as the result of a federal statute, at minimum the plaintiff's well-pleaded complaint must raise a federal question.

JA 588.

The longstanding "substantial federal question" doctrine relied on by the district court "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable*, 545 U.S. at 312; *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) (same). Here, Plaintiffs' claims necessarily depend on the substantial federal question whether HOEPA imposes affirmative assignee liability where state law does not.

Plaintiffs' sole rejoinder is to quote at length from a Michigan— *Vandenbroeck v. ContiMortgage Corp.*, *supra*—decision that directly *contradicts* Plaintiffs' HOEPA claim on the merits. The court there remanded a case in which plaintiff alleged only that HOEPA deprived defendants of their holder-in-due-course defense, on the ground that:

> By its terms, § 1641(d)(1) only applies if a plaintiff can assert a claim under some other law and, even then, only affects a state law defense (holder-in-due-course) which a defendant [ ] might raise; it does not

- 68 -

> require a plaintiff to prove anything more to succeed on his claim. Therefore, Plaintiffs' claims are not created by federal law.

*Vandenbroeck,* 53 F. Supp. 2d at 968.  That interpretation is consistent with the district court's opinion here (and most precedent) that § 1641(d) merely eliminates a holder-in-due-course defense.  The district court "disagree[d], however, that it follows that federal question jurisdiction is lacking in cases where § 1641(d) is pivotal to a plaintiff's claim."  JA 790.  Moreover, in contrast to *Vandenbroeck,* Plaintiffs here allege more than that HOEPA eliminates a holder-in-due-course defense (which the Assignee Defendants have not even asserted).  As Plaintiffs plead it, HOEPA provides the very basis for their affirmative claims, not just the elimination of a defense.  On these allegations, the complaints either create a federal cause of action or necessarily depend on resolution of a substantial question of federal law.  Either way, removal should be upheld.

### B. There Is Federal Bankruptcy Jurisdiction In Both Cases Based On Plaintiffs' Prior Bankruptcies.

As noted, the Assignee Defendants in *Nance* and *Tipton* also removed based on federal bankruptcy jurisdiction.  JA 713-15, 719, 726-66, 1296-98.  In *Tipton,* the district court found that the complaint independently supported federal bankruptcy jurisdiction, JA 1290, based on its prior decision in *Johnson,* alleging the same underlying facts.  JA 1839-45.  On appeal, Plaintiffs do not challenge

federal bankruptcy jurisdiction in *Tipton*.  On the same basis as in *Tipton*, the

complaint in *Nance* also supports federal bankruptcy jurisdiction.[18]

The relevant facts in *Tipton* and *Nance* are the same: Plaintiffs had earlier

filed voluntary petitions for relief under Chapter 7 of the United States Bankruptcy

Code, but had failed to list the claims they are asserting in these actions in their

bankruptcy "Schedules of Assets and Liabilities," as they were required to do.

Accordingly, Plaintiffs' claims remained property of their bankruptcy estates and

Plaintiffs had no standing to sue.  JA 713-14, 1297-98.  Under this Court's

precedent, an action is "related to" a bankruptcy action and thus bankruptcy

jurisdiction exists if "the outcome of that proceeding could conceivably have any

effect on the estate being administered in bankruptcy."  JA 1842 (citing *In re

Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (internal quotation marks

omitted)).  *See also Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 816

(4th Cir. 2007) (same).  Here, the actions are "related to" Plaintiffs' bankruptcy

---

[18]    The Defendant in *Nance* also argued that the action "arises in" and "aris[es]
under" the Bankruptcy Code, because the issue whether Plaintiffs lack standing to
assert their claims is determined by the Bankruptcy Code and could arise only in
the context of a bankruptcy case.  *See Grausz v. Englander*, 321 F.3d 467, 471 (4th
Cir. 2003); *In re A.H. Robins Co. v. Dalkon Shield Claimants*, 86 F.3d 364, 372
(4th Cir. 1996).  Plaintiffs did not dispute any of these substantive jurisdictional
arguments; they argued instead that the bankruptcy removal was untimely and
should have been to the bankruptcy court rather than the district court.    In fact,
however, the notice of removal states that removal occurred properly within thirty
days of notice of the bankruptcy, and removal "to the district court" is proper under
28 U.S.C. §§ 1441(a) and 1452(a).

cases because "at least a portion of the asset[s] created if Plaintiff[s] [are] successful in the present action[s] could be administered by the Chapter 7 trustee." JA 1844.  On this alternative basis, therefore, there indisputably is federal jurisdiction over Plaintiffs' claims and no abuse of discretion in refusing to grant their motion to remand.

## CONCLUSION

Plaintiffs' efforts to saddle Defendants with statutory penalties and treble damages for their originating lenders' alleged SMLL violations are legally unfounded.  For the foregoing reasons, the judgments of the district court should be affirmed.

## STATEMENT REQUESTING ORAL ARGUMENT

Defendants believe that oral argument is warranted here, given the detailed procedural history of these cases and the number and nature of the issues presented on appeal.

Respectfully Submitted,

/s/ Gerard J. Gaeng
Gerard J. Gaeng
ROSENBERG | MARTIN |
GREENBERG, LLP
25 South Charles Street, Suite 2115
Baltimore, MD 21201
(410) 727-6600
ggaeng@rosenbergmartin.com

*Lead Counsel and Counsel for Appellees Sovereign Bank, Residential Funding Company, LLC, Fifth Third Bank, The Bank of New York Trust Company, and JP Morgan Chase Bank, N.A.*

/s/ James C. Martin
James C. Martin
John M. McIntyre
Colin E. Wrabley
David J. Bird
REED SMITH, LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131
jcmartin@reedsmith.com
jmcintyre@reedsmith.com
cwrabley@reedsmith.com
dbird@reedsmith.com

*Counsel for Appellees Sovereign Bank, Residential Funding Company, LLC, Deutsche Bank Trust Co. Americas, Bank of New York Mellon, and JP Morgan Chase Bank, N.A.*

 /s/ James D. Mathias

James D. Mathias
Anthony P. Ashton
DLA PIPER, LLP (US)
6225 Smith Avenue
Baltimore, MD 21209-3600
(410) 580-3000
james.mathias@dlapiper.com
anthony.ashton@dlapiper.com

*Counsel for Appellees PB Investment Holdings LLC, successor by merger to PB Investment Corporation, and M&T Bank Corporation*

 /s/ Brian L. Moffet

Brian L. Moffet
GORDON, FEINBLATT, ROTHMAN, HOFFBERGER & HOLLANDER, LLC
233 East Redwood Street
Baltimore, MD 21202
(410) 576–4291
bmoffet@gfrlaw.com

*Counsel for Appellees PSB Lending Corporation and PSB Lending Home Loan Owner Trust 1997-4*

 /s/ Gregory L. Lockwood

Gregory L. Lockwood
TREANOR, POPE & HUGHES
29 West Susquehanna Avenue, Suite 110
Towson, MD 21204
(410) 494-7777
gllockwood@tph-law.com

*Counsel for Appellees Homeq Servicing Corporation, n/k/a Wachovia Equity Servicing, LLC f/k/a TMS Mortgage, and Wells Fargo Bank, N.A. f/k/a Wachovia Bank, N.A. f/k/a First Union National Bank, N.A.*

 /s/ Daniel H. Squire

Daniel H. Squire
Reginald B. McKnight
WILMER CUTLER PICKERING HALE AND DORR, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
daniel.squire@wilmerhale.com
reginald.mcknight@wilmerhale.com

*Counsel for Appellees HSBC Finance Corporation, Household Finance Corporation, Mortgage Electronic Registration Systems, Inc., and HSBC Mortgage Services, Inc.*

/s/ Daniel J. Tobin
Daniel J. Tobin
BALLARD SPAHR LLP
4800 Montgomery Lane
Suite 700
Bethesda, MD 20814-6354
(301) 664-6210
tobindj@ballardspahr.com

*Counsel for Appellees Litton Loan
Servicing LP; U.S. Bank, N.A.; Wells
Fargo Bank, N.A.*

/s/ Jefferson V. Wright
Jefferson V. Wright
E. Hutchinson Robbins, Jr.
Scott R. Wilson
MILES & STOCKBRIDGE, PC
10 Light Street
Baltimore, MD 21202
(410) 727-6464
jwright@milesstockbridge.com
erobbins@milesstockbridge.com
swilson@milesstockbridge.com

*Counsel for Appellee Bank of
America Corporation*

/s/ LeAnn Pedersen Pope
LeAnn Pedersen Pope
Victoria R. Collado
Andrew LeMar
BURKE, WARREN, MACKAY &
SERRITELLA, PC
22nd Floor
330 North Wabash Avenue
Chicago, IL 60611
(312) 840-7000
lpope@burkelaw.com
vcollado@burkelaw.com
lpope@burkelaw.com

*Counsel for Appellees JPMorgan
Chase Bank, N.A., formerly known as
Chase Manhattan Bank, and Banc
One Financial Services, Inc., now
known as JPMorgan Chase Bank,
N.A.*

/s/ Bruce E. Alexander
Bruce E. Alexander
WEINER BRODSKY SIDMAN
KIDER, PC
1300 19th Sreet, NW
5th Floor
Washington, DC 20036
(202) 628-2000
alexander@wbsk.com

*Counsel for Appellee Bayview Loan
Servicing, LLC*

/s/ Edward J. Longosz, II
Edward J. Longosz, II
Daniel A. Glass
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
1717 Pennsylvania Avenue, NW
12th Floor
Washington, DC 20006
(202) 659-6600
elongosz@eckertseamans.com
dglass@eckertseamans.com

Dorothy A. Davis
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA  15219-2788
(412)-566-5953
ddavis@eckertseamans.com

*Counsel for Appellee Fairbanks
Capital Corporation n/k/a Select
Portfolio Servicing, Inc.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 17,896 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), which is less than the 21,000 words granted Appellees for their response brief by the Court in its April 13, 2011 Order.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word 2003.

Dated July 8, 2011

                                      /s/ James C. Martin
                                      James C. Martin
                                      REED SMITH, LLP
                                      225 Fifth Avenue, Suite 1200
                                      Pittsburgh, PA 15222
                                      (412) 288-3131

*Counsel for Appellees Sovereign Bank, Residential Funding Company, LLC, Deutsche Bank Trust Co. Americas, Bank of New York Mellon, and JP Morgan Chase Bank, N.A.*

## CERTIFICATE OF SERVICE

In accordance with Rule 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that I have on this 8th day of July, 2011, provided the required copies of the foregoing Consolidated Brief of Appellees to the Office of the Clerk of the United States Court of Appeals for the Fourth Circuit, via overnight courier, and have electronically filed the Consolidated Brief of Appellees using the Court's CM/ECF system which will send notification of such filed to the following counsel:

E. David Hoskins
The Law Offices of E. David
Hoskins, LLC
2 Hamill Road
Suite 362
Baltimore, Maryland 21210

*Counsel for Appellants*

Daniel O. Myers
The Law Offices of
Daniel O. Myers, LLC
1127 Queensborough Blvd.
Suite 105
Mt. Pleasant, South Carolina 29464

*Counsel for Appellants*

 /s/ James C. Martin
James C. Martin
REED SMITH, LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131

*Counsel for Appellees Sovereign Bank, Residential Funding Company, LLC, Deutsche Bank Trust Co. Americas, Bank of New York Mellon, and JP Morgan Chase Bank, N.A.*